# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONYA D. DECOU-SNOWTON,** | * | **CIVIL ACTION NO.:** |
| **Plaintiff,** | * | |
| **v.** | * | |
| | * | |
| **JEFFERSON PARISH, ROY JUNCKER,** | * | **SECTION:** |
| **IN HIS INDIVIDUAL CAPACITY,** | * | |
| **CHRISTOPHER TROSCLAIR, IN HIS** | * | |
| **INDIVIDUAL CAPACITY, GRETCHEN** | * | |
| **TILTON, IN HER PERSONAL CAPACITY,** | * | |
| **AND JOAN RUIZ IN HER PERSONAL** | * | |
| **CAPACITY, ABC INSURANCE** | * | |
| **COMPANY,     Defendants** | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>COMPLAINT</u>

NOW INTO COURT, through undersigned counsel, comes Plaintiff, DONYA DECOU-SNOWTON ("SNOWTON"), who hereby brings this Complaint and respectfully avers, as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff brings this action for declaratory judgment, equitable relief, and monetary damages to secure the protection against and to redress unlawful discrimination on the basis of gender, race, and retaliation under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et. seq*., as amended ("Title VII"), 42 U.S.C §1983, Title I of the Americans with Disability Act of 1990 and Title I of the Civil Rights Act of 1991 ("ADA") Title V, Section 503 of the Act, 42 U.S.C § 12203, Title XXIX of the Family Medical Leave Act of 1993, 29 U.S.C. §

2615 *et. seq*., and Louisiana laws prohibiting intentional discrimination including the Louisiana Employment Discrimination Law codified as LSA-R.S. 23:332, *et seq*., and LSA- R.S. 23:967 protections against reprisal and La. Civil Code 2315 for intentional infliction of emotional distress, wrongful demotion, and defamation.

## JURISDICTION AND VENUE

2.       This Court has original jurisdiction of the Plaintiff's Section 1981 and 1983 claims pursuant to 28 U.S.C. §§1331 and 1343. The Court has original jurisdiction of the plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331, 1343, 2202, and 42 U.S.C. §2000e-5. This action is authorized and instituted pursuant to the ADA, 42 U.S.C. § 12117(a), which incorporates by reference plaintiff's Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3) and the Civil Rights Act of 1991, 42 U.S.C § 1981a; and 29 U.S.C § 2617.

3.       The employment practices alleged to be unlawful were committed in the State of Louisiana, and therefore, fall within the jurisdiction and venue of the United States District Court for the Eastern District of Louisiana pursuant to Title VII, 423 U.S.C. §2000e-5(f)(3).

4.       Supplemental jurisdiction over Complainant's state law claims is invoked under both Rule 18 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367, because they are part of the same case or controversy as Complainant's federal claims.

5.       This Court has personal jurisdiction over the Defendants- as each defendant is either domiciled in the Eastern District of Louisiana and the acts and omissions of all defendants occurred in the Eastern District of Louisiana.

6.       Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in the Eastern District.

7.       Venue is also proper in the Eastern District of Louisiana pursuant to 28 U.S.C. §

1391 and 42 U.S.C.A. §2000e-5(g).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Complainant has satisfied all administrative prerequisites for filing suit under Title VII, ADA, and the Louisiana Employment Discrimination Law, R.S. 23:302 *et. seq*.

9.      On or about June 30, 2020, Snowton filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On April 7, 2021, Snowton received the Notice of Right to Sue letter from the Department of Justice for her Title VII, ADA and retaliation claims included in her Charge of Discrimination.

10.     This Complaint is being filed within 90 days of Complainant's receipt of the Notice of Right to Sue.

## THE PARTIES

11.     Plaintiff, Donya Decou-Snowton ("Snowton"), is a person of the full age of majority, domiciled in the Parish of Jefferson, State of Louisiana. Snowton was employed with the Department of Juvenile Services from October of 2008 through June 8, 2020. She served as a Juvenile Probation Officer 3 until her wrongful demotion to Juvenile Home Detention Supervisor for Jefferson Parish Department of Juvenile Services on November 30, 2019.

12.     Defendant Jefferson Parish ("Jefferson Parish" or "The Parish") is a government body created pursuant to the laws of the State of Louisiana and is located within the Eastern District of Louisiana. At all relevant times, The Parish is and was the Complainant's employer through the Department of Juvenile Services and had at least 20 employees.

1.      Defendant Roy Juncker is the Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Juncker in his individual capacity for tort claims.

2.      Defendant Christopher Trosclair is the Assistant Director for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against Trosclair in his individual capacity for tort claims.

3.      Defendant Gretchen Tilton is the Assistant Director for Human Resources Management and HR Manager for the Department of Juvenile Services and is a resident of Jefferson Parish. Suit is brought against Tilton in her individual capacity for tort claims.

4.      Defendant Joan Ruiz is the former Probation Manager for the Department of Juvenile Services and a resident of Jefferson Parish. Suit is brought against her in her individual capacity for tort claims.

5.      Defendant ABC Insurance Company, upon information and belief, issued a policy of insurance to the Parish which provides coverage for the acts and omissions alleged in this Complaint.

6.      Each of the acts and omissions complained of in this Complaint were committed by the defendants and agents while in the course and scope of their employment with the Parish.

7.      In doing the acts and/or omissions alleged, Defendants acted under color of authority and/or color of state law.

**FACTUAL ALLEGATIONS**

8.      Plaintiff, Snowton (African American Female), was hired in October of 2008, to serve as a Juvenile Probation Officer for DJS. Snowton was promoted to a Juvenile Probation Officer III, a supervisory position and completed her probationary period by March of 2015 and stayed in that position until her wrongful demotion of November 30, 2019, to a Juvenile Home Detention Supervisor.

9.      Snowton's yearly evaluations for every year from 2009 through April of 2019

4

indicated that she always met expectations and her pay was increased for her exemplary performance; except for the evaluation of June 23, 2020, that evaluated her performance as below expectations after she had been presumed resigned from her position for more than two weeks.

10.     Snowton began suffering from harassment and discrimination on or about the spring of 2019. Upon information and belief an anonymous complaint was issued about DJS in the spring of 2019, after the complaint was issued Snowton began to suffer from harassment, was targeted, scrutinized, and retaliated against. Snowton attempted to go through the normal channels to resolve the issues to no avail. Instead, the harassment and targeting only intensified and Snowton filed a grievance against her immediate supervisor Joan Ruiz, Probation Manager on **August 23, 2019**, concerning a meeting that took place on **August 22, 2019**, with Director Roy Juncker, Probation Manager Joan Ruiz, Assistant Director Christopher Trosclair and Probation Officer Erin Ronquille.

11.     The very same day Juncker retaliated against Snowton and verbally advised her that he was removing her previously approved accommodation to utilize her lunch hour to pick up her children from the bus stop. At the time Ms. Snowton's husband was incapacitated due to a serious medical condition and Snowton was the only adult in her family able to care for the children.  Juncker advised Snowton that the privilege would be revoked because Snowton wants to "play the victim" and "rat" on everyone else. Snowton did not know what Juncker thinks she "ratted" about.  Juncker followed up in writing revoking he accommodation on **August 26, 2019**.

12.     Then, just two days later, on **August 28, 2019** – At 3:49 p.m. Snowton received an email from Christopher Trosclair stating there was a complaint filed by the DA Constantine regarding two alleged issues occurring on **August 22, 2019**, in Drug Court before Judge Burmaster.

13.     **On August 29, 2019**- Snowton provided a two-page written response to Trosclair regarding D.A. Constantine's complaint. She provided names of eleven different witnesses who were in Drug Court and have personal knowledge whether Snowton engaged in the activity that she was accused of. Trosclair did not reach out to any of the individuals named by Snowton, except for Dr. Ryals, a white male, and NO persons of color or African American witnesses were interviewed or questioned. Moreover, a transcript of the proceeding is available and does not include any testimony concerning the claims made against Mrs. Snowton, instead they took the word of an individual from an outside agency and failed to conduct an impartial investigation.

14.     On **September 27, 2019**, Snowton was moved out of Drug Court into case work supervision.

15.     On **October 4, 2019** – Joan Ruiz required Snowton to change one of the ratings on Luis Bustamante's evaluation so he could get a 6.5% raise, despite the fact that Snowton provided the rating as she found warranted as his supervisor. The evaluation rating that Ruiz directed Snowton to change related to the ATD policy.

16.     Then on **October 10, 2019,** the ATD policy was updated by probation manager Ruiz after comment on Luis Bustamante's evaluation, upon information and belief this was done after the fact to protect Bustamante and provide the appearance thast Snowton was not aware of the policy. Snowton was aware of the prior policy and saw that the change was subsequently made to conform to Bustamante's evaluation.

17.     The following day, on **October 11, 2019,** Snowton received an email from Christopher Trosclair at 9:35 a.m. noting that he was informed of a possible breach of security related to the BI Total Access System (GPS), that she was deactivated on September 30, 2019 but her name was on a list of users along with several other individuals who no longer used the

BI system and demanded a response to his questions regarding her status with BI system within the next 3.5 hours, by 1:00 p.m. Snowton provided a response at 10:50 am, at 12:00 pm., in response to her email, Trosclair sent Snowton four more follow up questions but never indicated when a response was due. Trosclair sent Mrs. Snowton a harassing and demeaning message at 1:38 p.m. that she had not responded to his follow up questions by 1:00 pm, although he never advised her of this expectation, he demanded a response within the next 42 minutes. This was all during the working day while Snowton had other responsibilities. Snowton provided a response to his follow up questions.

18.     On **October 11, 2019,** Snowton a filed second grievance due to retaliatory behavior and actions of the department and in retaliation for filing a grievance on August 23, 2019.

19.      On **October 15, 2019,** Snowton was advised at 12:44 pm that the meeting to address her grievance would take place at 3:00 pm that day with Joan Ruiz and Christopher Trosclair. Trosclair stated he obtained statements from Joan Ruiz and Treatment Supervisor, John Ryals, and denied getting statements from anyone else, alleging he did not want to "blast" the issue to the entire court.  Trosclair stated he did obtain the audio of the hearing and would present his findings to the Director Juncker, along with his findings from the BI issue.

20.     The meeting was in no way meant to address the grievance Snowton made and was instead used as a further attempt to harass Snowton and find information related to the D.A. Complaint and supposed violation of BI policy to possibly use against Snowton. During the meeting Snowton was threatened by the probation manager Ruiz that she has a right to file a grievance as well.

21.     On **October 22, 2019**, Director Juncker held a meeting with Snowton regarding

her grievance, Christi Lacombe was also present. Juncker attempted to threaten and intimidate Snowton for filing a grievance. Snowton provided examples of the plethora of issues and problems surrounding Drug Court practically since the change of probation officers took place. Juncker stated he believes that Snowton just came in at the wrong time and any supervisor who would have been placed in the position would have been in the same situation. Snowton informed Juncker that she feels that others have colluded and conspired to see her fail, such as Colleen George (Conley) another probation supervisor. Juncker stated he had not yet reviewed any of the allegations brought against. Snowton, but in reference to the BI complaint it was more of a breach on BI's part in that all employees had the same pin number and that is how it was set up, but now that has changed. Juncker stated he does not agree with Snowton's solution for training to achieve a more favorable workplace culture and environment, because Jefferson Parish offers enough trainings throughout the year. The meeting adjourned and. Snowton advised Director Juncker that she was hired to perform a job free of victimization, harassment, discrimination, unfair treatment, and retaliation and has done that job for almost 11 years.

22.    On **November 6, 2019** – Christopher Trosclair delivered a document to Snowton and instructed her to sign the signature page without allowing her to review the entire document prior to signing it. Snowton was not aware what the document was pertaining to, however, after she signed it, provided her with the letter dated the previous day, stating that she had a disciplinary hearing scheduled for the following day, 11/7/19 at 2:30 pm.  Trosclair's actions were in direct violation of Jefferson Parish Administrative Management Policies Section 502 Maintaining Standards and Effective Service, Rule 5 Pre-Disciplinary Hearings 5.6 Notice, which requires that the employee be provided notice postmarked five (5) calendar days in advance of scheduled hearing.

a. The letter advised that Snowton was in violation of DJS and Administrative Management Policies, Section 501, 02, and 503, which occurred between August 22, 2019 and October 3, 2019:

b. Engaging in a verbal argument with an Assistant District Attorney following a Juvenile Court Hearing;

c. Engaging in prohibited, discourteous, and unprofessional conduct;

d. Engaging in behavior constituting insubordination;

e. Neglecting your duty as Juvenile Probation Officer III;

f. Obtaining unauthorized access to the BI Total Access system;

g. Demonstrating poor judgment;

h. Making statements which contradict what was reported by staff and your contact with BI Customer Service;

i. Engaging in conduct that reflects unfavorably on the department and that is disruptive to the smooth and effective operation of the Department of Juvenile Services.

23.   On **November 7, 2019,** Snowton received a call from Christi Lacombe around 12:24 pm stating that the director, Roy Juncker would not be able to meet with her today as "something came up".  She stated the meeting will be postponed to one day next week.

24.   On **November 19, 2019,** Snowton was hand delivered another pre-disciplinary hearing letter indicating that the hearing was rescheduled for the following day at 10:00 a.m. This letter was also in violation of the rules regarding Notice for Pre-Disciplinary hearings.

25.   On **November 20, 2019,** Snowton was subjected to a 2.5-hour pre-Disciplinary hearing where she was repeatedly cut off and not allowed to speak in defense of herself. The

hearing was conducted by Trosclair, Ruiz, Tilton, and Juncker, who all fired questions at her about topics and issues that were not included in the pre-disciplinary notice. The hearing was biased, discriminatory, and a conclusion was already foregone prior to the hearing. Essentially, Snowton was blamed for a ruling that Judge Burmaster issued that Ruiz and D.A. Constantine were unhappy about. Additionally, Snowton was accused of breaching the BI system when she called the vendor when she could not log into the system to complete the review she was handling for ATD while others were out of town. Joan Ruiz stated that she told subordinate Probation Officer Bustamante to remove Supervisor Snowton's access to the system on September 30, 2019, but never advised Snowton that her access was removed or that she would violate policy if she logged onto the system to complete her work.

26.     On **November 26, 2019,** Snowton was hand delivered a disciplinary letter advising of her demotion to Juvenile Home Detention Supervisor effective November 30, 2019, the Saturday after Thanksgiving and her new schedule would be from 4p.m. to midnight, a drastic change from her prior schedule for the past eleven years.  Snowton was found to have violated Administrative Management Policies 501.5; 501.6, 501.7, 501.8, and 501.8.1; Policy 502.1; Policy 503.2, 503.2.1; 503.2.2; 503.2.3; and 503.2.4 for:

    a.  engaging in a verbal confrontation with an Assistant District Attorney;

    b.  Failing to be forthcoming in your explanation of what occurred;

    c.  Engaging in prohibited, disrespectful and unprofessional conduct;

    d.  Fraudulently gaining access to the BI Total Access system;

    e.  Making statements that contradict what was reported and recorded during contact with BI Customer Service;

    f.  Demonstrating poor judgment; and

g.   Neglect of duty as Juvenile Probation Officer III.

27.    The same day, on **November 26, 2019,** Snowton participated in a meeting with a panel of physicians and medical personnel in reference to changes in her husband's serious medical condition.

28.    On **November 27, 2019,** Snowton obtained permission from acting supervisor, Gloria Meisky to leave early for the day to take needed medication attributed to anxiety from stressors with her husband's medical condition, exacerbated with the stressors of the work environment.

29.    That same day, on **November 27, 2019,** Snowton received an email from Trosclair advising of a new supervisor's schedule for December 2019. The schedule had Mrs. Snowton scheduled to report for training on Saturday November 30, 2019, for work. Snowton had already advised Juncker that she could not work on Saturday November 30, 2019, Snowton was required to look for a facility to care for her terminally ill husband and father of her children.

30.    On **November 29, 2019,** Snowton emailed and texted Mr. Trosclair to notify him that she would be out on sick leave the following day, November 30, 2019. Snowton remained out on requested leave and informed Trosclair daily of her status through submission of FMLA packet on December 6, 2019.

31.    On **December 2, 2019,** Snowton received an email from Trosclair requiring her to provide a written statement by a registered physician or other accepted authority certifying that she was ill and unable to work during the period of sick leave of absence as stated in emails.

32.    **On December 3, 2019,** Snowton submitted medical documentation from her physician indicating that she was a patient under care on medication that required her to be on sick leave.

33.     On **December 6, 2019,** Snowton notified Mr. Trosclair that her situation had not changed and submitted FMLA documentation as it relates to her spouse's serious medical condition. She informed Trosclair that she would utilize her sick leave for days she was ill, in addition to being on FMLA until further notice in reference to her husband's medical condition in which she would use sick leave as well.

34.     On **December 10, 2019,** Snowton received correspondence from Juncker advising that she was AWOL, yet no indication or notice was provided to Snowton concerning her eligibility for FMLA. Snowton was also instructed to return any Jefferson Parish property in her possession.

35.     On **December 13, 2019,** Snowton turned in the property she had in her possession and had a supervisor sign the letter indicating that all property listed in the letter was received.

36.     **On December 16, 2019,** Snowton sent a letter to Director Juncker, with a copy to Gretchen Tilton and Trosclair, advising that the Parish was in violation of Jefferson Parish Policy regarding FMLA, federal and state law and that a response to her FMLA application was required along with pay for a week of sick leave that the department deducted from her paycheck.

37.     On or about **December 17, 2019**, Titlton contacted Snowton for the first time and advised that her FMLA leave was approved but that she was considered AWOL for the week of sick leave. Appellant was later provided with a copy of the approved application, that Director Junker signed on December 6, 2019, for FMLA leave from December 7, 2019, through June 7, 2020.

38.     On **December 18, 2019**, after Jefferson Parish officials including Juncker and Tilton were aware of the notice of violations of law illegally contacted Dr. Russo (Snowton's husbands' physician) to interfere with Snowton's FMLA. During the civil service hearing for

Snowton's presumed resignation Juncker testified that he didn't believe that Snowton needed to care for her husband, or if she was really ill because she was posting things on her private Facebook page, which is set to private, and Juncker is not a friend or in her social network.

39.     On **December 26, 2019,** Snowton filed a Civil Service Appeal to the demotion with Jefferson Parish Civil Service as well as allegations of discrimination, retaliation, and harassment.

40.     **December 30, 2019,** through her counsel, Snowton received an email from counsel for Jefferson Parish, Crystal Heine alleging that Mrs. Snowton filed a fraudulent FMLA claim and that she was to report to duty on January 1, 2020, as her husband's treating physician, Dr. Russo, advised that his condition would not improve, and she could return to work. Tilton testified during a civil service hearing for her presumed resignation that she contacted Dr. Russo without permission from Snowton or her husband, in violation of FMLA law and Jefferson Parish policy.

41.     On **January 6, 2020**, Snowton sent a follow up email through her counsel to counsel for Jefferson Parish requesting a copy of Dr. Russo's letter and a response to the Dec. 16, 2019. Jefferson Parish refused to provide the written response from Dr. Russo until April of 2020.

42.     On **January 8, 2020,** Snowton contacted the Department of Labor to make a complaint about the failure to comply with FMLA and wages that were not paid for sick leave. DOL did not initiate an investigation.

43.     On **February 26, 2020,** Snowton received three letters from Jefferson Parish to her counsel. The letter dated **Feb. 3, 2020,** but **mailed Feb. 18, 2020**, advised that it only concerned the AWOL designation for requested sick leave for 1 week and confirms that Jefferson

Parish Personnel were looking on Snowton's Facebook page while out on FMLA. The Parish alleged that according to Snowton's post she was seen watching football with family and friends on December 1, 2019, minutes before her shift was to begin. The letter confirms that Gretchen Tilton with HR contacted Dr. Russo's office on December 18, 2019 and spoke with an employee named Nicole who pulled Mr. Snowton's records and answered Ms. Tilton's questions, in violation of FMLA and HIPPA. The letter also confirms that Jefferson Parish also contacted Dr. Nicholson-Uhl's office and spoke with a nurse Jill, who answered questions about Snowton's prescriptions of medication without her permission.

44.     Juncker testified during Snowton's civil service hearing for her presumed resignation that Snowton's private Facebook posts made him feel that he "was being baited into taking action against her [Snowton]" or to do something to her. Snowton was in a photo watching a football game, spending the Christmas holidays with her sister and family, and posted that she was in Spain. Snowton was required to produce copies of her passport to demonstrate that she never left the country but was taking a mental vacation to Spain. Junker also testified that he took Snowton's posts on her private Facebook page personally, he "felt that she was trying to make [him] take an action, some type of action." Junker further testified that he has never monitored an employee's Facebook page while out on FMLA, except for Snowton.

45.     The letter dated **Feb. 7, 2020,** but mailed **Feb. 18, 2020,** claims addresses the property Snowton returned to Jefferson Parish and falsely accuses Snowton of not returning items as instructed and photographs of all returned property were not returned. Snowton was advised that the Parish was charging her for $141.00 for replacing a docking station that was returned, and $77.00 to replace a badge that was destroyed in a fire in 2013 that was never replaced by Jefferson Parish.

46.     The third letter dated **Feb, 17, 2020, mailed Feb. 18, 2020, i**nformed Snowton for the first time that her FMLA was to expire on February 28, 2020, and that she was to report to work on February 29, 2020 or she would be considered to have resigned from her position. Theletter also describes a variety of technical issues that the Parish appears to cite as Snowton's failure to follow protocol, such as not providing the FMLA application to the FMLA coordinator, Christie Lacombe who was out on vacation when Snowton went out on leave; that Parish cyberstalking revealed Snowton was in Atlanta Georgia over the Christmas holidays; and that Snowton was required to return to work on January 1, 2020, pursuant to an illegally obtained note from Mr. Snowton's treating physician.

47.     On **February 28, 2020**, Snowton requested an extension of her FMLA leave and a reasonable accommodation in response to the department's abrupt change from her return date of June 7, 2020 (as indicated on FMLA forms).

48.     On **February 28, 2020,** Director Juncker immediately responded to Snowton advising "Your 12 weeks of FMLA has been exhausted. To request an additional 12 weeks of leave without pay ***is not a reasonable ADA accommodation***. The parish has been reasonable in extending your FMLA request past the January 1, 2020, return date as noted by the doctor. Your failure to return to work tomorrow for your scheduled 8AM-4PM shift at Rivarde will result in you being considered to have resigned from your position effective February 29, 2020, in accordance with Personnel Rule IX, Section 5."

49.     On **March 2, 2020**, Tilton emailed Mrs. Snowton claiming that Juncker's email was sent in error and provided her with ADA forms to have completed and returned within the next four business days.

50.     On **March 6, 2020,** Snowton provided completed ADA forms from her physician

for the appointment that took place on March 6, 2020.

51.     On **March 9, 2020**, Tilton emailed Mrs. Snowton that further information was needed on her application and that a call was set for March 12, 2020, to discuss.

52.     On **March 9, 2020,** Snowton sent correspondence to Jefferson Parish through her attorney, in response to the three letters sent at the end of February noting the violations of the law and once again demanding that they stop harassment and interference of FMLA leave and to provide letter from Dr. Russo.

53.     On **March 12, 2020**, Snowton emailed Tilton advising that she could not see her doctor until March 27, 2020, and that she would be available for a call with her counsel.

54.     On **March 12, 2020**, Tilton emailed Snowton advising that she did not have a right to counsel present during the call and allowed Snowton to respond with additional information from her doctor by March 30, 2020.

55.     On **March 26, 2020,** Tilton emailed. Snowton advising that due to Covid19 the information was needed by April 10th and to have a meeting on April 14th.  Snowton responded to Tilton that her appointment was cancelled due to Covid and was rescheduled for April 20, 2020. Tilton advised Snowton to have the information provided from her doctor for ADA request by April 20, 2020.

56.     Snowton was unable to get in to see her doctor to complete her ADA paperwork. Snowton was advised that she had to have an in-person appointment to complete the paperwork and no appointments were being provided due to the COVID pandemic.

57.     On **May 22, 2020**, Snowton emailed Tilton advising that she has not been able to return to her physician and was trying to get an appointment. No further information was ever provided to Snowton or her counsel concerning her ADA forms or requirement for her to return

to work.

58.     On **June 12, 2020**, Snowton received through her counsel, a courtesy letter sent to Ms. Snowton's P.O. Box and dated June 9, 2020, advising her that she has used 70 days of LWOP, her FMLA expired on Feb. 28, 2020, and was being released from employment in accordance with Personnel Rule IX, section 13.5. Counsel was not able to communicate the presumed resignation to Snowton until June 16, 2020.

59.     On **June 13, 2020,** Snowton was advised by the hospital to come with her children because her husband had taken a turn for the worse. Mr. Snowton passed away on June 13, 2020.

60.     Snowton asserts that other non-African American employees and men in DJS have been treated more favorably than herself.

   a.   Upon information and belief Probation Supervisor Ms. Colleen George Conley repeatedly used the discriminatory word "wigger" around the department and was never formally disciplined.  She has an extensive history of subpar departmental problems with staff, the court, and community as a supervisor and has never been demoted.

   b.   In the fall of 2020 Ms. Colleen George Conley made an outburst and disturbance in Judge Calogero's court in front of a juvenile's family relating to potential participation in Drug Court, although her supervisors were aware and she was admonished by the Judge, she was never disciplined formally.

   c.   ATD was made aware that Trackers were not seeing probationers while under Colleen George's supervision, but George was never disciplined.

   d.   Upon information and belief Probation Officers M. Duplessis and D. Story conducted a school visit in which medication they obtained from the parent was

administered at school to the minor.  This medication administered was the wrong medication and the student passed out at school.  Formal disciplinary action was not taken against the P.O.'s or their supervisor.

e.  Upon information and belief, on or about September 16, 2019, former employee Nikki Johnson arrived at the office with her minor child and was observed sitting at the front desk for an extended period of time with receptionist as Snowton signed out and observed the situation; nevertheless, Juncker has informed Snowton that her children are not allowed on the premises.

f.  On or about September 25. 2019; Snowton received a complaint from the parent of probationer T. C. who phoned and stated Ms. Colleen George was disrespectful to her son while waiting for court.  Mrs. Snowton notified Mr.  Trosclair who instructed her to forward the call to Ms. Ruiz.  Per Ms. Ruiz no action was taken against Ms. George.

g.  October 4, 2019 – Ms. Ruiz instructed Mrs. Snowton to change L. Bustamante's evaluation to a higher evaluation number so he could get a 6.5% raise.  (Mrs. Snowton has always received at least a Meets Expectations evaluation on her annual reviews yet the maximum raise she has received is 5%)

h.  Supervisor, Krista Jerome is allowed to be driven between the East and West banks because she does not drive across bridges. Ms. Jerome is the only employee who has this accommodation, however, no accommodation or attempt to accommodate Snowton for her ADA request was performed. Upon information and belief Jerome did not submit a ADA request for accommodation.

1.  The Defendants acts and/or omissions caused Snowton to suffer mental,

emotional, and psychological harm.

2.      Snowton has suffered substantial loss in present and future wages, employment benefits, and future career opportunities because of Defendants' unlawful conduct.

3.      On July 8, 2020, Snowton filed an appeal to her presumed resignation citing that the Parish failed to follow its rules and policies and that she was retaliated against in violation of the Parish whistleblower policy. A hearing was held on March 23, 2021, and April 21, 2021. The referee issued an order denying her appeal on June 16, 2021, which is currently being appealed to the Board.

4.      No hearing was ever held for Snowton's appeal to her wrongful demotion filed in December of 2019.

## CLAIMS FOR RELIEF

### COUNT 1
Violation of 42 U.S.C. §1981

5.      Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

6.      Snowton is a member of a protected class, as an African American. Defendants actions are in violation of the rights afforded Snowton by the Civil Rights Act 1866, 42.U.S.C. §1981, as amened by the Civil Rights Act of 1991.

7.      By conduct described above, Defendants intentionally deprived Snowton of the same rights enjoyed by white citizens to the creation, performance, enjoyment and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

8.      As a result of Defendants' discrimination in violation of Section 1981, Snowton

has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions, thereby entitling her to compensatory damages.

9.      In its discriminatory acts described above, Defendants acted with malice or reckless indifference to Snowton's rights, thereby entitling her to punitive damages.

<u>**COUNT 2**</u>

**Title VII, 42 U.S.C. § 2000e-2(a)**
**Disparate Treatment – Gender**

10.     Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

11.     Snowton is a member of a protected class, as an African American female, and is qualified for the position she held.

12.     Snowton was the subject of mistreatment by several Parish employees, including but not limited to Christopher Trosclair and Roy Juncker based on her gender. On multiple occasions Trosclair and Juncker treated Snowton differently than other non-female employees, who were either disciplined less harshly or not at all for similar or more egregious policy violations than those alleged against Snowton in her pre-disciplinary hearing for her wrongful demotion in November of 2019.

13.     Snowton reported the discriminatory conduct to her employer, who failed to take reasonable remedial measures.

14.     Defendant Trosclair's actions were taken with malice and reckless disregard for Cooks' right to be treated on an equal basis with men.

15.     Defendant Juncker did not take reasonable remedial measures to address the

discriminatory actions of his subordinates, in reckless disregard for the Snowton's rights as secured by federal law.

16.    The Parish discriminated against Snowton in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 3

### Title VII, 42 U.S.C. § 2000e-2(a)
### Disparate Treatment – Race

17.    Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

18.    Defendants discriminated against Snowton based on her race. Snowton was treated differently than other non-African American, and Caucasian similarly situated employees. She was treated more harshly, scrutinized, and/or disciplined more severely than other non-African American and Caucasian similarly situated employees.

19.    Defendants failed to exercise reasonable care either to prevent this discrimination or to promptly correct these practices.

20.    Defendants' conduct was intentional and done with malice or with reckless indifference to Snowton's federally protected rights.

21.    The Parish discriminated against Complainants in violation of 42 U.S.C. § 2000-e2(a).

## COUNT 4

### Title VII, 42 U.S.C. § 2000e-3(a)
### Retaliation

22.    Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

23.    Snowton engaged in protected activity, by opposing the disparate treatment and discrimination as describe in preceding paragraphs.

24.     The Parish, through Trosclair, Juncker, and others, retaliated against Snowton by engaging in a series of materially adverse actions against her that would have dissuaded a reasonable person from complaining of discrimination.

25.     Defendants took the adverse actions against Snowton because of her protected activities.

26.     Defendants' actions were taken with malice and reckless disregard for Snowton's right be free from discrimination in the workplace.

27.     For the foregoing reasons, the Parish retaliated against Snowton in violation of 42 U.S.C. § 2000-e3(a).

## **COUNT 5**

**42 U.S.C. §1983**
**Deprivation of a Vested Property Right**

66.     Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

67.     The Fifth and Fourteenth Amendments of the United States Constitution, as well as the Louisiana Constitution and Louisiana law establish a constitutionally protected property right to due process for civil servants.

68.     Snowton enjoys a vested property right in her position as a civil servant and can only be demoted for cause after due process.

69.     The demotion was without cause, arbitrary and capricious, and resulted in a clear denial of Snowton's guaranteed and vested property right in her employment.

70.     Snowton was not provided adequate notice and an opportunity to be heard in advance of the pre-disciplinary hearing, the hearing included discussion of accusations and alleged policy violations not included in the pre-disciplinary hearing notice. Further, Defendants failed to

follow its policies relating to the pre-disciplinary hearing and failed to provide written notice of the reasons for the adverse employment action and how the policies were violated.

### COUNT 6

**State Law Discrimination based on Race and Gender and Retaliation**
**LA. R.S. § 23:3301 et. seq.**

71.   Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

72.   Defendants are liable to Snowton under the Louisiana Employment Discrimination Law, La. R.S. § 23:3301 *et. seq.* as described in the preceding paragraphs.

### COUNT 7

**State Law Reprisal based on whistleblowing activity in violation of La. R.S. §23:967**

73.   Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

74.   Snowton advised of illegal activity of the Parish with regard to interference with her FMLA, state and federal law, discrimination, cyber stalking, and failure to follow Jefferson Parish policies.

75.   Following Snowton's written notice of violations of the law she was retaliated against and eventually released from employment without proper notice.

### COUNT 8

**Title XXIX of the Family Medical Leave Act of 1993, 29 U.S.C. § 2615 *et. seq***

76. Snowton re-alleges and incorporates herein by reference all the foregoing allegations

77. Snowton completed and presented a request for FMLA leave on or around December 6, 2019.

78. Jefferson Parish stipulated during Snowton's Civil Service Hearing for her presumed resignation that it did not follow FMLA requirements related to notice.

23

79. Jefferson Parish through Tilton, wrongfully and illegally contacted Snowton's late husband's doctor in violation of FMLA policy and law and to interfere with her leave

80. Jefferson Paris wrongfully interefered with Snowton's FMLA leave by stalking her facebook account while out on leave

81. Jefferson Parish wrongfully interfered with Snowton's FMLA leave by repeatedly contacting her while on leave to require her to return to work based on illegally obtained and false information.

## COUNT 9

### Title I, 42 U.S.C. § 12111, et al.

82.     Snotwon re-alleges and incorporates herein by reference all the foregoing allegations.

83.     Snowton is an individual with a disability under the ADA, Snowton suffers from PTSD. Defendant was aware of Snowton's disability and Defendant failed to engage in an interactive process with Snowton to determine what reasonable accommodation was available to allow Snowton to perform the essential functions of her job.

84.     Instead of providing Snowton with a reasonable accommodation, Defendant terminated her in violation of the ADA.

## COUNT 10

### Wrongful Demotion LSA C.C. 2315

85.  Snowton re-alleges and incorporates herein by reference all the foregoing allegations.

86.  Snowton brings an action against the Defendants for wrongful demotion pursuant to LSA C.C. art. 2315, when individual defendants, acting in their individual or official capacities as

employees of Jefferson Parish demoted Snowton without cause and the decision was arbitrary and capricious.

87.   By virtue of respondeat superior, Jefferson Parish is legally responsible and may be held liable for the actions of its employees.

88.   As a consequence of her demotion, Snowton suffered loss of earnings and will continue to suffer loss of future earnings as well as mental distress.

## COUNT 11

**Intentional Infliction of Emotional Distress and Defamation La. C.C. art. 2315**

89.   Snowton re-alleges and incorporates herein by reference all the foregoing allegations and specifically pleads this claim against Defendants Christopher Trosclair, Roy Juncker, Gretchen Tilton, and Joan Ruiz only.

90.   Trosclair, Juncker, Tilton, and Ruiz intentionally caused Snowton great emotion distress related to the discrimination, retaliation, and eventual presumed resignation.

91.   Juncker, Ruiz, and Trosclair also defamed Snowton, as the statements made by the individuals concerning her performance were false, the claims have been made to others outside of the Department, which has caused harm to Snowton's reputation. Additionally, Tilton's actions to illegally contact Snowton's physician and her late husband's physician without permission and discuss private personal medical treatment caused harm to Snowton's reputation.

92.   In Louisiana, defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. *Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So. 2d 706, 715; *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So. 2d 552, 559; *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993). "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged

publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Trentecosta*, 96-2388 at 10, 703 So. 2d at 559 (citing RESTATEMENT (SECOND) OF TORTS§ 558 (1977)).

93.   A defamatory communication is one that tends to harm the reputation of another to lower that person in the opinion of the community or to deter third persons from associating or dealing with him. *Sassone v. Elder,* 626 So. 2d 345, 352 (La. 1993).

94.   Defamatory words include almost any language which on its face tends to injure a person's reputation. *Cortez v. Shirley,* 555 So. 2d 577, 579 (La. App. 1st Cir. 1989).

95.   The false and defamatory statements made by the Defendants have caused and continue to cause damage to Snowton.

## JURY DEMAND

96.   Snowton demands a Jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** after due proceedings are had, Snowton prays that this Complaint be deemed good and sufficient; and that this Court assume jurisdiction of this action and after trial:

i.   Declare, pursuant to 28 U.S.C. § 2202 that the Defendants unconstitutionally violated Snowton's constitutional rights.

ii.   Grant Snowton a permanent injunction enjoining Defendants, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request, from continuing to violate Title VII and state anti-discrimination laws.

iii.   Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

iv. Order Defendants to make Snowton whole by providing appropriate backpay and loss of benefits with prejudgment interest, in amounts to be determined at trial, and any other affirmative relief necessary to eradicate the effects of Defendants unlawful employment practices.

v. Order Defendants to reinstate Snowton or to make her whole by providing appropriate her with front pay, in amounts to be determined at trial, to eradicate the effects of Defendants unlawful employment practices.

vi. Order Defendants to make Snowton whole by compensation for past and future pecuniary losses resulting from the unlawful employment practices describe above, in amounts to be determined at trial.

vii. Order Defendants to make Snowton whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices describe above, including but not limited to emotional and mental anguish, pain and suffering, humiliation, loss of enjoyment of life, and devastation in amounts to be determined at trial.

viii. and any other affirmative relief necessary to eradicate the effects of Defendants unlawful employment practices.

ix. Order Defendants to pay Snowton punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

x. Award attorney fees and costs in this action.

xi. Award Snowton such other relief and benefits as the cause of justice may require.

xii. For any and all other just and equitable relief to which Snowton may be entitled whether or not pled herein.

Respectfully Submitted,


*/s/ Stephanie Dovalina*
Stephanie Dovalina, LSBA #31137
700 Camp Street, Ste. 105
New Orleans, LA 70130
Phone No.: (504)528-9500
Mobile: (504) 339-9815
Fax: (504) 353-9516
stephanie@dovalinalawgroup.com
Attorney for Donya Decou-Snowton