## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DONYA D. DECOU-SNOWTON**                                  **CIVIL ACTION**

**VERSUS**                                                              **NO. 21-1302**

**JEFFERSON PARISH, ET AL.**                              **MAG. SECTION 3**

### ORDER AND REASONS

Before the Court is a 12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. No. 34) filed by Jefferson Parish, Roy Juncker, and Christopher Trosclair ("Defendants"). Plaintiff, Donya Decou-Snowton, has filed an opposition. (Rec. Doc. No. 38). Having considered the briefs and the applicable law, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART** as outlined below.

I.       **BACKGROUND**

         a.   **Initial Complaint**

Plaintiff Donya Decou-Snowton filed her complaint, as amended, alleging unlawful discrimination on the basis of gender, race, and retaliation under 42 U.S.C. § 1981, § 1983, Title I of the Americans with Disability Act and Title I of the Civil Rights Act of 1991 ("ADA"), Title V, § 503 of the ADA, and 42 U.S.C. § 12203 (prohibiting retaliation), Title VII, and the Family Medical Leave Act ("FMLA"). The complaint also alleges violations of Louisiana state laws prohibiting intentional discrimination including the Louisiana Employment Discrimination Law ("LEDL") protections against reprisal. (Rec. Doc. No. 1, pp. 1-2).[1]

---

[1]  In response to the initial complaint, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Rec. Doc. No. 12). Plaintiff subsequently filed a First Supplemental and Amending Complaint re-alleging and incorporating by reference all allegations in the initial complaint. (Rec. Doc. No. 28).  The amended complaint also dismissed state law claims for intentional infliction of emotional distress, defamation, and wrongful demotion. It further dismissed claims for punitive damages under Title VII and the LEDL and the request for an injunction and declaratory relief. *Id.*

1

Snowton is an African-American female hired by Jefferson Parish as a Juvenile Probation Officer for the Department of Juvenile Services ("DJS") in 2008. (Rec. Doc. No. 1, p. 4). Snowton was later promoted to the supervisory position of Juvenile Probation Officer III in 2015. Plaintiff contends that she began suffering harassment and discrimination following an anonymous complaint about DJS which culminated in her demotion to Juvenile Home Detention Supervisor on November 30, 2019 and her ultimate termination from DJS on June 12, 2020.   The relevant timeline below is helpful to the analysis of the issues herein.

On August 23, 2019, Snowton filed a grievance against her immediate supervisor, Joan Ruiz, concerning a meeting that took place with Director Roy Juncker, Assistant Director Christopher Trosclair, and Probation Officer Erin Ronquille.[2] *Id*. Plaintiff alleges that during the meeting, Juncker retaliated against her and verbally advised that he was removing a prior-approved accommodation to pick up her children during her lunch hour. *Id*. The accommodation was revoked in writing on August 26, 2019. *Id*.

On August 28, 2019, Snowton received an email from Trosclair concerning a separate complaint filed by an assistant district attorney ("ADA") regarding issues alleged to have occurred on August 22, 2019, in Jefferson Parish Drug Court ("Drug Court"). *Id*. On August 29, 2019, Snowton provided a two-page written response which included eleven witnesses present in Drug Court who had personal knowledge regarding the complaints. *Id*. at 6. Plaintiff alleges that Trosclair did not reach out to any of the individuals named except for Dr. Ryals, a white male and that no persons of color were interviewed or questioned, and no impartial investigation was conducted. *Id*.   On October 11, 2019, Snowton claims Trosclair also demanded a response to

---

[2] The amended complaint dismissed all claims against her immediate supervisor Joan Ruiz and Gretchen Tilton of Jefferson Parish Human Resources—leaving only Jefferson Parish, Juncker, and Trosclair as Defendants in this matter. (Rec. Doc. No. 28).

questions regarding her status with the BI Total Access System and sent her "a harassing and demeaning message" for untimely responding to the questions despite her responding within the indicated timeframe. (Rec Doc. No. 1. at 6-7). The same day, Snowton filed a second grievance based on the "retaliatory behavior and actions" for filing the previous grievance. *Id*. at 7.

On October 15, 2019, Snowton alleges that she was advised that a meeting to address her grievance would take place that same day before Ruiz and Trosclair. *Id*. Snowton alleges that the meeting was instead "used as a further attempt to harass [her] and find information related to the [A]DA complaint and violation of BI policy." *Id*. During a subsequent October 22, 2019 meeting, Plaintiff alleges that Juncker attempted to further threaten and intimidate her. *Id*. at 8.

The complaint further alleges that on November 6, 2019, Trosclair delivered to and instructed Snowton to sign a document without allowing her to review it in its entirety. *Id*. Snowton claims that she only subsequently realized that the document was, in fact, an untimely disciplinary hearing notice in direct contravention of Jefferson Parish Administrative Management Policies requiring employees be provided with a five-day notice of hearing. *Id*. The initial hearing was cancelled but Snowton claims to have received another notice letter—this time on November 19, 2019, rescheduling the hearing to November 20, 2019—again in violation of the notice requirements. *Id*. at 9. During the meeting, Snowton claims she was repeatedly cut off and not allowed to speak in her own defense, accused of breaching the BI system, and blamed for an unfavorable Drug Court ruling. *Id*. at 10.

On November 26, 2019, Plaintiff alleges that she received a hand delivered disciplinary letter demoting her to the position of Juvenile Home Detention Supervisor and modifying her schedule to the hours of 4:00 p.m. to 12:00 a.m. *Id*.[3] On November 27, 2019, Snowton obtained

---

[3] On that same day, Snowton participated in a medical personnel panel meeting regarding changes in her husband's medical condition. (Rec. Doc. No. 1, p. 11).

permission to leave early and take medication for anxiety surrounding her husband's medical condition and stressors of work. *Id*. The same day, she received notification that her training for the new position would take place on November 30, 2019—despite previously advising Juncker that she would be unavailable on that date. *Id*.

On November 30, 2019, Snowton took sick leave and remained out on leave.  On December 2, 2019, Trosclair sought a written statement from a physician certifying that she was ill during the period of sick leave. *Id*. She submitted the medical documentation to Trosclair on the following day. *Id*. On December 6, 2019, Plaintiff informed Trosclair through submission of an FMLA application that she would remain out on FMLA and sick leave. *Id*. at 12. On December 10, 2019, Juncker informed Snowton that she was AWOL and instructed her to turn in any Jefferson Parish property. *Id*.

On December 16, 2019, Plaintiff sent a letter to Gretchen Tilton, with Jefferson Parish Human Resources, Juncker, and Trosclair advising that Jefferson Parish was in violation of its own policies as well as state and federal law regarding FMLA leave and that a response to her application and pay for the week of November 30, 2019 was required. *Id*. The next day, Tilton advised Plaintiff that her FMLA leave was approved but that she was still considered AWOL for the week of November 30, 2019 and provided her a copy of an approved application for FMLA leave commencing on December 7, 2019 through June 7, 2020. *Id*.

On December 26, 2019, Snowton appealed her demotion to the Jefferson Parish Civil Service, and alleged discrimination, retaliation, and harassment. *Id*. On December 30, 2019, Snowton received email notification from Jefferson Parish counsel indicating that she had filed a fraudulent FMLA claim and required her to report to duty on January 1, 2020, as Dr. Russo had advised that her husband's condition would not improve, and she could return to work. *Id*. The

complaint alleges that during the Civil Service hearing, Tilton admitted to contacting Dr. Russo on December 18, 2019, without permission from Plaintiff and her husband. *Id*. at 13. Plaintiff further alleges that Juncker testified during the same hearing that he did not believe Snowton was ill or that she needed to care for her husband based on posts on her private Facebook page. *Id*. at 12. On January 8, 2020, Plaintiff contacted the Department of Labor to make a complaint about the failure of DJS to comply with FMLA and unpaid sick leave, but no investigation was initiated. *Id*.

On February 26, 2020, Plaintiff received three letters from Jefferson Parish. The first concerned the AWOL designation for the week of requested sick leave. *Id*. at 14. The second letter concerned her failure to return Jefferson Parish property and included charges to replace items that were alleged not to be returned. *Id*. The third letter informed Plaintiff that her FMLA leave would expire on February 28, 2020, and if she did not return to work, she would be considered to have resigned from her position. *Id*. at 15.

On February 28, 2020, Plaintiff requested an extension of her FMLA leave and a reasonable accommodation. *Id*. The same day, Juncker responded as follows:

> Your 12 weeks of FMLA has been exhausted. To request an additional 12 weeks of leave without pay *is not a reasonable ADA accommodation*. The parish has been reasonable in extending your FMLA request past the January 1, 2020, return date as noted by the doctor. Your failure to return to work tomorrow for your scheduled 8AM-4PM shift at Rivarde will result in you being considered to have resigned your position effective February 29, 2020, in accordance with Personnel Rule IX, Section 5.

*Id*. (emphasis in original). On March 2, 2020, Tilton emailed Plaintiff claiming the above correspondence was sent in error and provided her with ADA forms to complete and return within four business days. *Id*. Plaintiff timely provided completed ADA forms from her physician. *Id*. On March 9, 2020, Tilton emailed Plaintiff to request further information concerning her application and set a call to discuss, informing Plaintiff she had no right to have counsel during the call. *Id*. at

16.

Due to the onset of the COVID-19 pandemic, all meetings and doctor appointments were delayed. *Id*. On May 22, 2020, Plaintiff advised that she was unable to return to her physician despite attempts to get an appointment. On June 12, 2020, Plaintiff received a letter advising she had used seventy days of leave without pay, that her FMLA expired on February 28, 2020, and she was released from employment. *Id*. at 17. Her husband passed away the next day. *Id*.

On July 8, 2020, Plaintiff filed another appeal to the Jefferson Parish Civil Service based on her presumed resignation, the Parish's failure to follow rules and policies, and retaliation in violation of whistleblower policy. *Id*. at 19. Her appeal was denied, subsequent to a hearing, on June 16, 2021. *Id*. According to the amended complaint, her initial appeal regarding her demotion was "dismissed as moot" without a hearing upon the subsequent hearing of her whistleblower appeal that was filed a year later. (Rec. Doc. No. 28, p. 14). Plaintiff claims this dismissal violated Jefferson Parish Civil Service Rules and her due process rights by denying her an opportunity to appeal her demotion. *Id*. Furthermore, the characterization of her failure to return to work as a resignation resulted in the termination of her medical benefits without notice. *Id*. at 17. Further, the amended complaint indicates that two weeks after Plaintiff's presumed resignation, Ruiz and Juncker authored and executed an unfavorable performance evaluation of Snowton, in violation of Jefferson Parish Civil Service Rules prohibiting issuance of evaluations when an employee is out on leave, which still remains in her personnel file despite a Civil Service referee refusing to allow any testimony concerning the evaluation at her Civil Service hearing. *Id.* at 24.

On January 18, 2022, this Court dismissed the first motion to dismiss as moot, without prejudice to reurge. (Rec. Doc. No. 30). The remaining Defendants filed the instant motion to dismiss on February 11, 2022. (Rec. Doc. No. 34).

## II.     THE PARTIES' CONTENTIONS

Defendants are seeking dismissal of the following claims: (1) punitive damages under § 1981 and § 1983 against Jefferson Parish; (2) race and sex-based hostile work environment; (3) § 1983 due process violations pursuant to the Fifth and Fourteenth Amendments; (4) FMLA interference; and (5) failure to accommodate under the ADA.[4]  (Rec. Doc. No. 34-1, p. 9). In her response, Snowton indicates that she no longer wishes to pursue a claim for punitive damages against Jefferson Parish under 42 U.S.C. § 1981 nor for due process violations pursuant to the Fifth Amendment. (Rec. Doc. No. 38, p. 2, 11). Accordingly, those claims are dismissed, and the parties' remaining arguments are addressed in detail below.[5]

## III.     APPLICABLE STANDARD

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff

---

[4] Defendants assert that they are not addressing the claims of race and sex discrimination and retaliation in the instant motion.  (Rec. Doc. No. 34-1, p. 8). Consequently, the Court will not consider the comparator evidence put forth by the Plaintiff at this time.

[5] In their reply, Defendants raise an additional argument addressing the asserted claims for retaliatory hostile work environment. However, "[i]t is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 Fed.Appx. 307, 315 (5th Cir. 2008). Accordingly, the Court does not address any arguments regarding Plaintiff's claim of retaliatory hostile work environment at this time.

pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557). The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (internal quotation omitted).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005); *see also* Fed. R. Evid. 201(b)(2) (permitting courts to judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan,* 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986)). Importantly, the court should not evaluate the merits of the allegation but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Nevertheless, a court may

not assume that a plaintiff can prove facts that were not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Indeed, dismissal is appropriate where the complaint "lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). Even so, "[m]otions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *TestMasters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

Finally, the Federal Rules of Civil Procedure provide that a court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[G]ranting leave to amend is especially appropriate … when the trial court has dismissed the complaint for failure to state a claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted). As a general rule, claims and allegations that are not raised in the complaint, but raised for the first time in a response to a motion to dismiss are not properly before the court. *Middaugh v. InterBank*, 528 F.Supp.3d 509, 535 (N.D. Tex. 2021). Nevertheless, the Fifth Circuit has held that courts may construe new allegations and theories in response to dispositive motions as motions for leave to amend, thus providing the court a path to consider new allegations. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend).

## IV.   LAW AND ANALYSIS

### a.  Punitive Damages under 42 U.S.C. § 1983

Although Plaintiff states that she is dismissing her claim for punitive damages under 42 U.S.C. § 1981, she does not address Defendant, Jefferson Parish's, argument to dismiss punitive damages under 42 U.S.C. § 1983. (*See* Rec. Doc. No. 38, p. 2). Jefferson Parish correctly asserts

that Snowton is not entitled to recover punitive damages against a municipality pursuant to the statute. (Rec. Doc. No. 34-1, pp. 9-10). "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Accordingly, Plaintiff cannot state a claim for punitive damages against Jefferson Parish pursuant to § 1983.

    **b.  Hostile Work Environment under Title VII and the LEDL Against Jefferson Parish**

To prevail on a hostile work environment claim under both Title VII and the LEDL, a plaintiff must prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race or gender; (4) the harassment complained of affected a term, condition, or privilege of employment; and if the harassment was committed by a coworker rather than a supervisor, (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002). Courts determine "whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating ... and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in original) (internal citation and quotation marks omitted). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir. 2003).

Defendants argue that Snowton fails to state a claim for hostile work environment under both Title VII and the LEDL based on the mostly conclusory allegations asserted in the complaint. (Rec. Doc. No. 34-1, p. 11). Defendants further contend that nothing in the complaint connects the

conduct at issue to race or sex. [6] *Id*. at 12.

Plaintiff contends that she is a member of a protected group as an African-American female and that she was subjected to unwelcome harassment beginning in 2019 after an anonymous complaint about racial discrimination and unfair treatment was submitted within DJS. (Rec. Doc. No. 38, p. 3). Plaintiff then reiterates alleged instances of harassment and scrutiny from her complaint, outlined in full above, contending that these instances are more than enough to satisfy her burden to survive a motion to dismiss. *Id*. at 3-10. However, her allegations state that Ruiz "increased her harassment of Snowton," Trosclair "proceeded to send multiple demeaning messages," and Juncker "attempted to threaten and intimidate her for using the grievance process," (Rec. Doc. No. 38, pp. 3, 6), without providing necessary detail from which the Court could conclude that the conduct constitutes a hostile work environment. *See id.* She further states that "she was demoted, [] subjected to several meetings and arbitrary deadlines, [] monitored while out on FMLA, her paperwork approval was delayed, and [] accused of fraud and lying." (Rec. Doc. No. 38, p. at 10-11). Finally, she notes that she filed several grievances, advising Juncker in writing and verbally that she felt she was being targeted, harassed, and subjected to a hostile work environment. *Id*.

In reply, Defendants assert that Plaintiff again provided largely conclusory references to harassment without describing the actions and conduct at issue and that she further failed to provide how the alleged harassment was based on race or sex. (Rec. Doc. No. 42, p. 2).

The Court agrees that many of the allegations included in the complaint and outlined again

---

[6] *Black v. Pan Am. Lab'ys, LLC*, No. A-07-CV-924 LY, 2009 WL 10669028, at *17 (W.D. Tex. Mar. 3, 2009), *report and recommendation adopted*, No. A-07-CA-924-LY, 2009 WL 10669148 (W.D. Tex. May 13, 2009) (While the terms "sex" and "gender" may have different meanings in other contexts, the terms are used interchangeably in the context of Title VII by the United States Supreme Court, this Circuit and others) (*citing Wilson v. Delta State Univ.*, 143 Fed. Appx. 611, 613-14 (5th Cir. 2005); *Ackel v. Nat'l Communications*, 339 F.3d 376, 382 (5th Cir. 2003)).

in the opposition memorandum are conclusory and are not considered for purposes of a motion to dismiss. *See Conner v. Orleans Parish Sheriff's Office*, 2019 WL 4393137, at *3 (E.D. La. Sept. 13, 2019) ("[Plaintiff's] allegations that '[Defendant] began to sexually harass [her] on the job' and that he 'committed an assault and battery upon' her are entirely conclusory and should not be considered for purposes of the motion to dismiss.") (citing *Iqbal*, 556 U.S. at 678). As noted, the complaint merely provides that Ruiz "increased her harassment of Snowton," Trosclair "proceeded to send multiple demeaning messages," and Juncker "attempted to threaten and intimidate her for using the grievance process," (Rec. Doc. No. 38, pp. 3, 6), without providing any detail from which the Court could conclude that the conduct was sufficiently severe or pervasive such that it constitutes a hostile work environment. *See id*.

Furthermore, nowhere in the opposition or the complaint does Snowton allege facts to suggest that any of the actions by the Defendants were based on her race or gender. Plaintiff merely states that Ruiz *increased* her harassment with no underlying facts or details about the alleged harassment. Further, though Snowton complains of demeaning messages, there are no assertions that the substance of these messages contained any language regarding her race or gender. No matter how toxic or unpleasant the environment was, Snowton points to no comments or actions that were based on race or gender, thus, nothing sustains a race- or gender-based hostile work environment claim. *See Baker v. FedEx Ground Package System, Inc.*, 278 Fed.Appx. 322, 329 (5th Cir. 2008) ("The phrases 'fired girl walking' and 'stupid' are not 'based on race' and, thereby, do not sustain a race-based hostile work environment claim. [Defendant's] other comments – that 'she did not want to work with people like' [plaintiff] and that 'whites rule' – are race-related incidents, but they are not sufficiently severe and did not unreasonably interfere with [plaintiff's] work performance."). Accordingly, the motion to dismiss Snowton's race and sex based hostile

12

work environment claims is granted and the claims are dismissed.

### c.   Due Process Violations under 42 U.S.C. § 1983[7]

#### i.   Procedural Due Process

In order to state a procedural due process claim, a plaintiff must allege: (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law. *Cola v. Deutsche Bank Natl. Trust Co.*, 2018 WL 4052195, at *3 (E.D. La. Aug. 23, 2018) (citing *Nobles Constr., LLC v. Parish of Wash.*, No. 11-2616, 2012 WL 1865711, at *4 (E.D. La. May 22, 2012) (citing *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991)).

A legally cognizable property interest is not incidental to public employment; rather, it must be created by an independent source, such as state law. *Muncy v. City of Dallas, Tx.*, 335 F.3d 394, 398 (5th Cir. 2003); *Wallace v. Shreve Mem'l Library*, 79 F.3d 427, 429 (5th Cir. 1996). Under Louisiana law, "a permanent classified civil service employee has a protected interest in her job." *Wallace*, 79 F.3d at 431; *see also Winn v. New Orleans City*, 919 F.Supp.2d 743, 754 (E.D. La. 2013). Plaintiff contends and Defendant does not dispute that she had a property interest in her job as a Juvenile Probation Officer for the Department of Juvenile Services in Jefferson Parish. Accordingly, the Court finds that Plaintiff has satisfied the first element of an established property interest.

Defendants contend that despite the property interest, Plaintiff has not shown that a deprivation occurred without due process of law. Specifically, Defendants argue that they have satisfied the due process requirements for a pre-disciplinary hearing. (Rec. Doc. No. 34-1, p. 14).

---

[7] As noted previously, Plaintiff has withdrawn any claims existing under the Fifth Amendment, and accordingly, this Court analyzes due process violations pursuant to the Fourteenth Amendment only.

Defendants contend that Snowton's own allegations establish that the constitutional minimums were met by acknowledging that she received notice of the pre-disciplinary hearing and had the ability to provide her version of the events before discipline was rendered. *Id*. at 15. Finally, Defendants argue that Snowton availed herself of post-disciplinary proceedings through an appeal of her demotion to the Jefferson Parish Personnel Board. *Id*. at 16.

For her part, Plaintiff contends that she received two untimely notices for a pre-disciplinary hearing and that she was not provided with due process at the hearing itself. (Rec. Doc. No. 38, p. 13). Plaintiff further alleges that the letter was vague and did not enumerate any specific rules she violated. *Id*. At the hearing, Plaintiff alleges that she was subjected to a 2.5-hour hearing where "she was repeatedly cut off and not allowed to speak in defense of herself." *Id*. Additionally, Plaintiff alleges that Juncker told her to present statements in her defense despite her being previously instructed by Trosclair not to speak to anyone about the allegations—ultimately preventing her from obtaining any statements in her own defense. *Id*.

Further, Plaintiff contends that there was no post-disciplinary proceeding regarding the appeal of her demotion whatsoever, as the hearing referred to by the Defendants involved a whistleblower appeal covering different allegations and subject matter. *Id*. at 14-15. Plaintiff notes that she filed an appeal regarding her demotion in December of 2019 but was denied a Civil Service hearing in violation of Jefferson Parish rules. *Id*. at 15. According to Plaintiff, the fact that she was completely deprived of the opportunity to participate in a post demotion Civil Service hearing for more than two years alone constitutes a violation of her procedural due process rights. *Id*.

Generally, public employees with cognizable property interests in continued employment are entitled to a pre-termination hearing. *See Helton v. Clements,* 832 F.2d 332, 337 (5th Cir. 1987); *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir. 1988); *Irby v. Sullivan,* 737 F.2d 1418, 1421

(5th Cir. 1984). "A satisfactory pretermination 'hearing' need not be elaborate, for such a hearing is merely designed to prevent the employer from making a mistake." *Browning,* 990 F.2d at 844 (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545 (1985)). In essence, the hearing "should be an initial inquiry whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Helton,* 832 F.2d at 337 (citing *Loudermill,* 470 U.S. at 544–46). The essential requirements of a pre-deprivation hearing are "notice and an opportunity to respond." *Loudermill,* 470 U.S. at 546.

The Court notes that the issues raised in the instant case are similar to those in *Papin v. Univ. of Mississippi Med. Center.* 347 F.Supp.3d 274 (S.D. Miss. 2018). There, the amended complaint alleged lack of notice and an adequate hearing. *Id.* at 279. Specifically, plaintiff indicated that he did not have adequate notice of the "*true* basis for his termination," and thus, he was unable to adequately defend himself. *Id.* (emphasis in original). The court stated that procedural due process, at a minimum, requires adequate process including notice of all charges. *Id.*; *see also Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (student dismissed from dental residency program "must be given some meaningful notice and an opportunity to respond."). Accordingly, the court found that the procedural due process claim survived the motion to dismiss and defendant was not entitled to qualified immunity. *Id.* Notably, in footnote 31, the court stated, "The Court notes that it must take the complaint's factual allegations as true in ruling on a 12(b)(6) motion to dismiss. One could not help but read the letter attached to [defendant's] motion that seems to refute the assertion that [plaintiff] had no prior notice of the allegations against him at the appeals hearing. Where the issue is 'plausibility rather than a lack of evidence,' the Court will not weigh the competing facts." *Id.* at fn. 31 (quoting *Doe v. Univ. of Miss.*, No. 3:16-cv-63-DPJ-FKB, 2018 WL 3570229, at *11 (S.D. Miss. July 24, 2018)).

Likewise, here, there is a dispute about the adequacy of the notice received.  Additionally, there is a dispute regarding Snowton's opportunity to respond, in light of her contention that she was prevented from preparing a defense and was not permitted to speak in her own defense during the hearing regarding her demotion.  Furthermore, Plaintiff claims that she was entirely deprived of a post-disciplinary hearing.  Plaintiff has provided sufficient facts that, when viewed in her favor, present a cognizable claim for procedural due process violations.  Accordingly, the motion to dismiss Plaintiff's claim for procedural due process is denied.

### ii. Substantive Due Process

Defendant argues that because Snowton has not stated any factual allegations that could establish a violation of procedural due process, her substantive due process claims should also fail. (Rec. Doc. No. 34-1, p. 17).  Plaintiff contends that the discipline issued was arbitrary and capricious. (Rec. Doc. No. 38, pp. 15-16).

In this context, the right to substantive due process prohibits "arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)).  "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997) (quoting *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993)).  "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quoting *Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 673 n. 3 (5th Cir.

2007)). Nonetheless, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Lewis*, 665 F.3d at 631 (quoting *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).

Here, Plaintiff has shown that she had a property interest in her employment and has further alleged facts sufficient to suggest that her demotion and her termination were arbitrary and capricious. Plaintiff points to the evaluation completed by Juncker and Ruiz after her presumed resignation in violation of Jefferson Parish policy that mirrored the claims made during her demotion, which she was never given an opportunity to address. (Rec. Doc. No. 38, p. 16). Plaintiff further notes Trosclair's actions in forbidding her to speak to anyone about the allegations against her, depriving her of a defense, and failing to speak to any witnesses provided by Snowton during the Drug Court complaint investigation. *Id*. Plaintiff also notes that Juncker informed her that the BI complaint was likely a breach on the part of the BI system as all employees had the same pin number, but later disciplined her for having access to the system. *Id*. Finally, Plaintiff argues that her demotion was entirely without cause. *Id*. At this stage, the Court should not evaluate the weight of the allegations but must satisfy itself only that the plaintiff has adequately pled a legally cognizable claim to withstand a motion to dismiss. Here, Plaintiff has done so and accordingly the motion to dismiss on this issue is denied.

### iii.  Municipal Liability and Qualified Immunity

Defendant Jefferson Parish contends that it should not be subjected to liability under § 1983. (Rec. Doc. No. 34-1, p. 17). Regarding municipal liability, Jefferson Parish contends that it cannot be liable because Snowton has failed to allege any official policies or customs by Jefferson Parish that resulted in any deprivation of constitutional rights. *Id*. at 18. In addition,

Jefferson Parish contends that the claim for violation of due process rights against it should be dismissed for "failure to allege sufficient facts to establish municipal liability against it." *Id*.

The remaining Defendants contend that Snowton cannot state a claim against them in their official capacities and that they are entitled to qualified immunity. *Id*. Specifically, Defendants contend that the only allegations pertaining to Trosclair in connection with the due process claim is his participation in investigations leading up to and including the pre-disciplinary hearing. *Id*. at 20. Regarding Juncker, the only allegation is that he participated in the pre-disciplinary hearing. *Id*. As pled, these actions of participating in the investigation and disciplinary proceedings "cannot be objectively unreasonable in following the requisite procedure prior to rendering disciplinary action." *Id*.

### 1.   Municipal Liability against Jefferson Parish

"[M]unicipal liability under [§] 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Belcher v. Lopinto*, 492 F.Supp.3d 636, 648 (E.D. La. 2020) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). Here, Jefferson Parish argues it cannot be liable because Snowton has failed to allege any official policies or customs resulting in a deprivation of constitutional rights. (Rec. Doc. No. 34-1, p. 18). Plaintiff argues that it is "official Jefferson Parish policy that all civil servants can only be disciplined for cause and that they must be provided due process." (Rec. Doc. No. 38, p. 17). Plaintiff argues that Juncker, as the Appointing Authority, was aware of these policies but demoted her without evidence of a violation and with direct knowledge that his actions were against Civil Service rules in violation of Snowton's constitutional rights. *Id*. In addition, Plaintiff has pled factual allegations that point to Jefferson Parish's violation of their own policies regarding pre-disciplinary hearings. *Id*. At this stage, the Court finds Plaintiff has

pled sufficient facts to survive the motion to dismiss and municipal liability may still attach to Jefferson Parish under § 1983.

## 2. Qualified Immunity

Where a public official invokes qualified immunity as a defense to a civil action against him, a plaintiff has the burden of establishing a constitutional violation and overcoming the defense. *See Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam) (en banc)). To meet this burden, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). The court has discretion to decide which of the two prongs of the qualified immunity analysis to examine first. *See Jackson*, 959 F.3d at 200.

At the 12(b)(6) stage, to find that a defendant violated the law at step one of the qualified immunity analysis is to say that, taking the facts in the light most favorable to the plaintiff, the plaintiff has stated a claim upon which relief may be granted—that is, that the alleged conduct violated a constitutional right. *See Morgan*, 659 F.3d at 384; *see also Littlejohn v. New Orleans City*, 493 F.Supp.3d 509, 516 (E.D. La. 2020). For "a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Turner*, 848 F.3d at 685 (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards*, 566 U.S. 658, 664 (quoting *al-Kidd*, 563 U.S. at 741). Once a plaintiff alleges that an official's conduct violated a clearly established right, the court must determine "whether the official's conduct was objectively

reasonable under the law at the time of the incident." *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005). An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [] conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).

When the defense of qualified immunity is raised in a 12(b)(6) motion, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). A court evaluating such a challenge must determine that the plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) (quoting *Wicks v. Miss. State Empl. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Defendants argue that the only allegations pertaining to Trosclair in connection with the due process claim involve his participation in the investigations leading up to her pre-disciplinary hearing and the hearing itself. (Rec. Doc. No. 34-1, p. 20). Defendants also argue that the only allegations pertaining to Juncker in connection with the due process claim is that he participated in her pre-disciplinary hearing. *Id*. As pled, Defendants contend that following the procedure required in rendering disciplinary actions cannot be objectively unreasonable. *Id*. Plaintiff argues that qualified immunity is defeated where an official knows or reasonably should know that the action taken within his sphere of official responsibility violates the constitutional rights of a plaintiff. (Rec. Doc. No. 38, p. 17). Further, Plaintiff contends that it is likewise defeated where

an official takes the action with the malicious intent to cause a deprivation of rights or other injury. *Id*. at 17-18. According to Plaintiff, the allegations that Trosclair and Juncker both acted with malice and knowledge when depriving her of her due process rights, is sufficient to defeat the instant motion. *Id*. at 18.

As the Court has determined that Plaintiff's procedural and substantive due process rights survive the motion to dismiss, the first prong of the qualified immunity inquiry is fulfilled. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Next, the Court must determine whether the conduct of Trosclair and Juncker, *as alleged in the complaint*, was objectively reasonable under the law. The Court disagrees with Defendants' characterization of their actions as "following the requisite procedure prior to rendering disciplinary actions." (Rec. Doc. No. 34-1, p. 20). The complaint alleges that Trosclair prevented Plaintiff from preparing statements in her defense by directing her not to speak to anyone who had knowledge of the accusations against her. (Rec. Doc. No. 28, p. 28). This is noteworthy because this instruction directly contradicted the statement by Juncker that Plaintiff should prepare a defense. *Id*. The complaint further states that in investigating the incidents warranting discipline, Trosclair failed to contact the witnesses provided by Snowton to confirm whether there was any truth to the accusations, with the exception of Dr. Ryals. *Id*. Regarding Juncker, Plaintiff has alleged that as the Appointing Authority, he was aware of Civil Service rules and Jefferson Parish policies but demoted her without evidence of any violation and with knowledge that his actions violated her procedural and substantive due process rights. (Rec. Doc. No. 38, p. 17). Plaintiff's complaint also includes the evaluation Juncker and Ruiz completed after her presumed resignation in violation of Jefferson Parish policy. (Rec. Doc. No. 28, p. 24).

Here, the Court is satisfied that Plaintiff's allegations overcome the defense of qualified

immunity at the motion to dismiss stage. This case is similar to *Thompson v. Louisiana ex rel. Dept. of Public Safety and Corrections*, in which the Court stated:

> Plaintiff specifically alleges a property right in his employment, which defendants do not contest. [] He further maintains that his termination was effected "without a pre-deprivation hearing, and without offering or conducting a sufficiently prompt post-deprivation hearing." [] Furthermore, in his Amended Complaint, Plaintiff alleges that "Warden James D. Miller … is vested with the sole authority to discipline employees…" [] The Court agrees that Plaintiff's pleadings contain little that demonstrates personal responsibility by Warden Miller and that such will ultimately be necessary to impose liability under § 1983. But those considerations are more appropriate on a motion for summary judgment, not a motion to dismiss, particularly where, as here, some of the factual predicate needed by Plaintiff may only be revealed through discovery.

2006 WL 1995796, at *4. In response to the affirmative defense of qualified immunity, the Court stated that it was "premature" to issue a ruling on the merits of the issue, allowing Plaintiff to conduct discovery on the issue of qualified immunity and the § 1983 due process claims. *Id*. at 7. The Court granted Plaintiff sixty days of discovery, and at the completion of that window, Plaintiff was ordered to submit a reply under Rule 7 of the Federal Rules of Civil Procedure to plead specific facts sufficient to overcome the qualified immunity defense pursuant to *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). *Id*.[8] While Plaintiff has provided sufficient facts to overcome a motion to dismiss, mindful that qualified immunity is "an entitlement not to stand trial or face the burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511 (1985), the Court adopts the same approach.

---

[8] The *Thompson* court explained:

> [T]he Fifth Circuit has established a procedure, short of dismissing a case, to undertake in situations where a plaintiff's initial pleadings appear deficient with regard to a qualified immunity defense. As discussed in *Schultea*, "First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Schultea*, 47 F.3d at 1433-34. The *Schultea* Court continued, "Vindicating the immunity doctrine will ordinarily require such a reply, and a *district court's discretion not to do so is narrow indeed* when greater detail might assist… The district court need not allow any discovery unless it finds that plaintiff has supported his claim *with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts*." *Id*. at 1434 (emphasis added).

2006 WL 1995796, at *9.

### d. **FMLA Interference Against Jefferson Parish**

"It [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1); *see also Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021). To state a prima facie FMLA interference claim, a plaintiff must allege that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Hester*, 11 F.4th at 306 (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Defendants argue that Plaintiff has not demonstrated a denial of benefits to which she was entitled under the FMLA. (Rec. Doc. No. 34-1, pp. 21-22). Specifically, Defendants contend that Snowton does not point to any violation or interference of her FMLA rights "through Jefferson Parish's alleged monitoring of her social media page, verifying the reporting medical certification or visitation records associated with the requested leave, or contact[ing] her for updates on her leave status." *Id*. at 22. Defendants further note that the FMLA regulations specifically provide that a human resources professional, such as Tilton, may contact the healthcare provider for purposes of clarification and authentication of the medical certification related to the serious health condition of a family member. *Id*.

Without citing to anything in support, Plaintiff argues that Jefferson Parish "stipulated that they failed to follow the regulations for implementation of FMLA for Snowton." (Rec. Doc. No. 38, p. 18). Plaintiff claims Jefferson Parish attempted to terminate her FMLA leave on two separate occasions without notice, contacted her and her husband's physicians without consent in an attempt to deny leave, and monitored her private Facebook page in search of proof that leave was invalid. *Id*. at 18-19.

To begin, while Defendants are correct that an employer may contact the health care provider for purposes of clarification and authentication of the medical certification, 29 C.F.R. § 825.307 specifically states, "If an employee submits a complete and sufficient certification signed by the health care provider, the employer **may not** request additional information from the health care provider." 29 C.F.R. § 825.307(a) (emphasis added). Further, it states, "the employer may contact the health care provider for purposes of clarification and authentication of the medical certification … **after the employer has given the employee an opportunity to cure any deficiencies**." *Id*. (emphasis added). It further states, "**Under no circumstances** … may the employee's direct supervisor contact the employee's health care provider." *Id*. (emphasis added) Furthermore, the regulations clarify that authentication "means providing the health care provider with a copy of the certification and requesting verification that the information contained on the certification form was completed and/or authorized by the health care provider who signed the document." *Id*. "Clarification means contacting the health care provider to understand the handwriting on the medical certification or to understand the meaning of a response." *Id*. Finally, "[e]mployers **may not** ask health care providers for additional information beyond that required by the certification form." *Id*. (emphasis added).

According to the complaint, "Juncker testified that he didn't believe that Snowton needed to care for her husband, or if she was really ill because she was posting things on her private Facebook page." (Rec. Doc. No. 28, p. 14). This calls into question the scope of communications with the health care providers and whether such communications were within the parameters as outlined in the regulations. This is reinforced by the allegation that "Snowton received an email from counsel for Jefferson Parish, Crystal Heine, alleging that Ms. Snowton filed a fraudulent FMLA claim and that she was to report to duty on January 1, 2020, as her husband's treating

physician, Dr. Russo, **advised that his condition would not improve, and she could return to work**." (Rec. Doc. No. 28, pp. 14-15). Finally, and most significantly, the complaint alleges that the letter sent by Dr. Russo confirms that the information sought by Jefferson Parish violated the FMLA's regulations: "The letter confirms that Gretchen Tilton with HR contacted Dr. Russo's office on December 18, 2019 and spoke with an employee named Nicole who pulled Mr. Snowton's records and answered Ms. Tilton's questions, in violation of FMLA and HIPPA." (Rec. Doc. No. 28, p. 15). The letter confirms that Jefferson Parish also contacted Dr. Nicholson-Uhl's office and spoke with a nurse Jill, who answered questions about Snowton's prescriptions of medication without her permission. *Id*. The Court need not address whether the other instances raised by Plaintiff rise to the level of FMLA interference, as it is sufficient to note that contacting Dr. Russo and Dr. Nicholson-Uhl to inquire into her husband's specific condition and her own medications violates FMLA regulations which clearly state, "Employers may not ask health care providers for additional information beyond that required by the certification form." 29 C.F.R. § 825.307(a). Viewed in a light most favorable to Plaintiff, the motion to dismiss the claim of FMLA interference is denied.

### e.   Failure to Accommodate under the ADA against Jefferson Parish

"Under the ADA, it is unlawful for an employer to fail to accommodate the known limitations of an employee's disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011). A prima facie claim for failure to accommodate requires that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (emphasis omitted).

In her initial complaint, Snowton indicates she was an individual with a disability under the ADA, as she suffers from PTSD. (Rec. Doc. No. 1, p. 24). She further states that Defendant was aware of her disability and failed to engage in an interactive process with her to determine a reasonable accommodation, and that she was fired instead. *Id*. In her amended complaint, Plaintiff claims that Jefferson Parish was aware of her disability because she was previously on leave prior to her husband's illness. (Rec. Doc. No. 28, p. 32).

Jefferson Parish argues that an employer is not required to provide the employee with a reasonable accommodation for a relative with a disability because the duty only applies to qualified employees with disabilities. *Id*. Jefferson Parish argues that Plaintiff requested an extension of FMLA leave and a reasonable accommodation on February 28, 2020, only as the result of the expiration of FMLA leave time with the intention of seeking an accommodation of additional time. (Rec. Doc. No. 34-1, p. 23). Jefferson Parish argues that it had no knowledge of her alleged disability, and her allegations fail to assert one. *Id*. Defendant asserts that while Plaintiff indicates she has PTSD, she does not state that Jefferson Parish was aware of the specific medical condition. *Id*. at 24. Further, Defendant notes that there is a difference between knowledge of a disability and knowledge of limitations experienced as a result of that disability, and Snowton does not allege any limitations resulting from her PTSD. *Id*. at 25.

Plaintiff contends that she sought a reasonable accommodation for her own medical condition. (Rec. Doc. No. 38, p. 19). Plaintiff claims Juncker was aware that she suffered from and was approved to take Xanax for PTSD, as a result of multiple tragedies including the death of one daughter in a house fire and the death of another from cancer, as well as her husband's illness and subsequent incapacitation. *Id*. Snowton contends that she worked at DJS throughout each of these tragedies. *Id*. She claims she is not required to divulge every detail regarding her medical treatment

26

to survive a motion to dismiss. *Id*. Plaintiff maintains that she has asserted a claim for failure to accommodate because (1) she is "a qualified individual under the ADA and suffers from PTSD"; (2) that "her employer was aware of her disability" and "became aware prior to her husband's illness"; (3) that she requested an ADA accommodation to Juncker and was immediately denied; (4) that she timely provided documentation to Jefferson Parish from her doctor; and (5) that "Jefferson Parish failed to engage in an interactive process with her" and cut off her medical benefits. *Id*.

Notably, the reasonableness of a Plaintiff's accommodation request is an inappropriate inquiry at the motion to dismiss stage. *Badalamenti v. Louisiana Dep't of Wildlife and Fisheries*, 439 F.Supp.3d 801, 808 (E.D. La. 2020). Plaintiff "does not need to prove the reasonableness of [her] accommodation request in order to survive a motion to dismiss." *Falls v. Hous. Auth. of Jefferson Par.*, No. 15-6501, 2016 WL 1366389, at *6 (E.D. La. Apr. 6, 2016). Thus, Defendant's arguments regarding the validity of an accommodation of additional leave lacks merit at this time.

However, Plaintiff has failed to provide any facts to support that Jefferson Parish had knowledge, not just of her PTSD, but of any consequential *limitations* that arose as a result of her PTSD. In *Taylor v. Principal Financial Group., Inc.*, the Fifth Circuit explained that under the ADA, "it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability. The distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities." 93 F.3d 155, 164 (5th Cir. 1996). The Fifth Circuit concluded that "it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom." *Id*.; *see also Gammage v. W. Jasper Sch. Bd. of Educ.*, 179 F.3d 952, 954-55 (5th Cir. 1999). Here, Snowton never alleges that Jefferson Parish was aware of

limitations resulting from her PTSD, nor what those limitations may be. Like the plaintiff in *Jin Choi v. Univ. of Texas Health Science Center at San Antonio*, Plaintiff "never alleges that [she] provided [Defendant] with any information about [her] disability beyond [her] diagnosis]." 633 Fed.Appx. 214, 216 (5th Cir. 2015). As the Fifth Circuit explained, when dealing "in the amorphous world" of mental health conditions, "it will often be impossible for an employer to identify an employee's specific disabilities, limitations, and possible accommodations." *Id.* (internal quotation omitted). That is the case here: the complaint contains no allegations that Snowton notified Jefferson Parish of the limitations resulting from her PTSD that required accommodation. Accordingly, the motion to dismiss Plaintiff's claim for failure to accommodate under the ADA is granted.

## V.     LEAVE TO AMEND

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000). As stated by the United States Supreme Court:

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or **by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action**.

*Nietzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (emphasis added). Where, however, the "complaint alleges the plaintiff's best case," a further factual statement from the plaintiff need not be allowed. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Moreover, when the plaintiff declares the sufficiency of his pleadings and makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper when the plaintiff's allegations fail to state a claim for which relief can be

granted. *Whiddon v. Chase Home Finance*, 666 F.Supp.2d 681, 692 (E.D. Tex. 2009) (citing *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997)). Further, a plaintiff should not be granted leave to amend after being afforded repeated opportunities to do so. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right"); *Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (holding leave to amend was properly denied where the relator had previously filed two amended complaints). Finally, a court may deny leave to amend where a proposed amendment would be futile. *See Rivera-Colon v. Parish of St. Bernard*, 516 F.Supp.3d 583, 591 (E.D. La. 2021) (citing *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010)).

"An amendment is futile when the plaintiff has pled his or her best case, and there are no 'additional facts that could be alleged in a second amended complaint that could not have been alleged in the [original complaint].'" *BP Gulf Coast LNG, LLC v. Sabine-Neches Navigation District of Jefferson Cty., Texas*, No. 1:21-cv-00470, 2022 WL 874184, at *15 (E.D. La. Feb. 24, 2022) (quoting *Heck v. Orion Grp. Holdings, Inc.*, 468 F.Supp.3d 828, 863 (S.D. Tex. 2020)). Here, Plaintiff was on notice of the deficiencies in her complaint since the filing of Defendants' initial motion to dismiss. (*See* Rec. Doc. No. 12). Yet, despite filing an amended complaint, Plaintiff did not provide additional facts beyond the conclusory allegations to show that the presence of a hostile work environment was due to her race or sex nor show that Defendants had any knowledge of her specific limitations under the ADA. Despite previous opportunities to amend to address these deficiencies, Plaintiff has failed to clarify the factual allegations so as to confirm with the requirements of a valid legal cause of action. *See Niezke*, 490 U.S. at 330. Therefore, the Court does not find it is warranted to permit leave to amend these claims again.

Additionally, for the first time in her opposition to the instant motion, Plaintiff indicates that Jefferson Parish "retaliated against her for [sic] taking FMLA" and outlines the applicable law relevant to FMLA retaliation. (Rec. Doc. No. 38, p. 18). Notably, a claim for retaliation under FMLA has not been formally asserted in either the initial or the amended complaint. Plaintiff now clarifies that, "DJS not only interfered with her FMLA but retaliated against her for taking leave to care for her husband," and that she "has alleged facts in her Complaints demonstrating the retaliation asserted by DJS after she took FMLA." (Rec. Doc. No. 38, p. 19). She requests an opportunity to amend her Complaint to include the claim of retaliation. *Id*. Defendants argue that Plaintiff has had ample opportunity to amend her complaint to set forth a cause of action for FMLA retaliation but failed to do so and oppose any request to amend. (Rec. Doc. No. 42, p. 10).

The Court will allow Plaintiff to amend her complaint to add a claim for FMLA retaliation. Under the FMLA retaliation clause, employers may not discriminate or retaliate against an employee for exercising her rights under the act. *Jones v. Children's Hosp.*, 58 F.Supp.3d 656, 661 (E.D. La. 2014) (citing *Bocalbos v. Nat'l Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)). In her amended complaint, Plaintiff alleges that after she submitted her FMLA application, Jefferson Parish sent her three separate letters, one confirming that Jefferson Parish personnel were monitoring her Facebook page, one accusing her of failing to return items, and one informing her that her FMLA would expire on February 28, 2020. (Rec. Doc No. 28, pp. 15-16). Juncker testified during the Civil Service hearing for her presumed resignation that "Snowton's private Facebook posts made him feel that he 'was being baited into taking action against her' or to do something to her." *Id*. He further testified that he took the posts personally, saying he "felt that she was trying to make [him] take an action, some type of action." *Id*. at 16. He further stated that he had never monitored another employee's Facebook page while out on FMLA leave, except for Snowton. *Id*.

These allegations suffice to state a plausible claim for FMLA retaliation under Rule 12(b)(6), the *Twombly/Iqbal* standards, and Rule 8(a)(2), which requires only that a complaint "contain a short and plain statement of the claim showing that the pleader is entitled to relief [and]… does not require detailed factual allegations." *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937 (quotations omitted). "This simplified notice pleading standard need only give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The liberal discovery rules and summary judgment motions are then employed to explore the details of the claim." *O'Neal v. Cargill, Inc.*, 178 F.Supp.3d 408, 422-23 (E.D. La. 2016). Accordingly, Plaintiff may file an amended complaint specifically adding a count for FMLA retaliation.

However, as discussed in detail herein at Section IV(b)(iii)(2), Plaintiff shall file a Rule 7(a)(7) reply within sixty days addressing Defendants' defense of qualified immunity directly.

## VI.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the **12(b)(6) Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Rec. Doc. No. 34)** is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims for punitive damages pursuant to 42 U.S.C. § 1983, hostile work environment under Title VII and the LEDL, and failure to accommodate under the ADA are dismissed. All other claims remain.

**IT IS FURTHER ORDERED** that Plaintiff file an amended complaint within five (5) days of this Order or by Tuesday, September 20, 2022, adding a claim for FMLA retaliation.

**IT IS FURTHER ORDERED** that Plaintiff file a Rule 7(a)(7) reply directly addressing Defendants' defense of qualified immunity within sixty (60) days of this Order or by Tuesday, November 15, 2022.

New Orleans, Louisiana, this 15th day of September, 2022.


**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**