UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONYA D. DECOU-SNOWTON, | * | CIVIL ACTION |
| *Plaintiff* | * | NO.  21-1302 |
| | * | |
| VERSUS | * | DIVISION:  1 |
| | * | |
| JEFFERSON PARISH, ET AL., | * | MAGISTRATE JUDGE |
| *Defendants* | * | JANIS VAN MEERVELD |

<u>ORDER AND REASONS</u>

This is an employment discrimination lawsuit. Defendants have filed a Motion for Summary Judgment seeking dismissal of all claims (Rec. Doc. 77) and plaintiff has filed a Motion for Partial Summary Judgment (Rec. Doc. 71) seeking dismissal of some of defendants' defenses. Based on the undisputed facts and interpreting any disputed facts in plaintiff's favor, the Court finds that plaintiff cannot establish any of her claims and that summary judgment for the defendants is appropriate. Accordingly, defendants' Motion for Summary Judgment (Rec. Doc. 77) is GRANTED and plaintiff's claims against defendants are dismissed with prejudice. As to plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 71), it has been mooted by the granting of defendants' motion and is therefore DENIED as moot.

<u>Background</u>

Plaintiff Donya Decou-Snowton began working as a Probation Officer I for Jefferson Parish in October 2008. Def.'s Stmt. of Uncont. Facts 1, ECF No. 77-2. She was promoted to Probation Officer II after one year, and she was promoted to Probation Officer III in 2015 by Roy Juncker, Director of the Department of Juvenile Services. <u>Id.</u> In January 2019, Snowton began supervising the Drug Court and Alternatives to Detention Unit ("ADU"). Pl.'s Resp. to Def's Stmnt. of Uncont. Facts 2, ECF # 83-1.

1

Snowton claims that issues began when she drafted an anonymous complaint in February or March 2019 complaining of racial discrimination in the workplace. This complaint resulted in an investigation by Jefferson Parish and a report issued with findings and recommendations on May 7, 2019. Def.'s Ex. 56., Investig. Rep., ECF No. 77-7, at 72-79. Snowton claims that there were rumors that she had drafted the complaint and that she experienced a campaign of retaliation and harassment afterwards.[1] The first specific issue she describes occurred in May 2019 when Probation Manager Joan Ruiz attempted to issue a "coach and counseling" to Snowton for failing to perform her duties as Supervisor of the Drug Court and ADU. Pl.'s Ex. 3, CCS Form, ECF No. 83-5. But Snowton admits that the coach and counseling could not proceed because she demonstrated that she had performed her duties. She claims that Ruiz stormed out of the meeting.[2]

The next several incidents she cites occurred on August 22, 2019. She allegedly grumbled in court during a probation hearing in apparent disagreement with the argument of the prosecutor, Blair Constant. Def.'s Ex. 6, Oct. 11, 2019, Report, ECF No. 77-4, at 11. Constant claims that he met with Snowton after court in Ruiz's office and Snowton argued with him and became verbally aggressive about the prosecutor's position in court. Id.

Unrelated to the incident with Constant, Snowton was also called into a meeting on August 22, 2019, to discuss issues with Erin Ronquille, Snowton's subordinate in the ADU/Drug Court Unit, who had replaced Chantrell Cook as the Drug Court Probation Officer earlier in 2019. Pl.'s Resp. to Def's Stmnt. of Uncont. Facts 3, ECF No. 83-1. Cook had trained Ronquille from March through May 2019, but Cook was concerned that both Ronquille and Snowton were new to Drug Court. Id.  Cook was prohibited from attending Drug Court hearings because it made Ronquille

---

[1] Snowton cites page 113 of the Cook deposition, but it appears she erroneously failed to include the cited page in her exhibits.
[2] Snowton cites pages 103-04 of her own deposition, but it appears she erroneously failed to include the cited pages in her exhibits.

feel uncomfortable, and Cook felt this was discriminatory and retaliatory. Id. at 4. Accounts of this August 22, 2019, meeting differ. According to Snowton, the focus of the meeting soon shifted from the issues between Ronquille and Cook to attacks on Snowton. Def.'s Ex. 39,  Aug. 2019 Grievance, ECF No. 77-7, at 4. She says that she was verbally attacked by Juncker and Ruiz when she tried to deny Ronquille's accusation that she was having inappropriate meetings with the District Attorney and when she was accused of telling Ronquille that she would not make it in Drug Court. Id.  But according to Juncker, Snowton started yelling at Ronquille and calling her a liar during the meeting. Juncker Aff. ¶ 6, Def.'s Ex. 35, ECF # 77-6, at 91. Juncker says he learned during the meeting that Snowton was leaving the office whenever she wanted for personal reasons. Id. ¶9. As a result of this meeting and the issues giving rise to the meeting, Juncker decided to move Snowton into a different position serving as Case Supervisor at a different location effective September 27, 2019. Id. ¶12.  However, she was still at the same salary and still held the title of Probation Officer III. Id. ¶13.

Snowton called  HR Manager Gretchen Tilton later on August 22, 2019, complaining that she  had been personally attacked and humiliated during the meeting with Juncker. Pl.'s Resp. to Def's Stmnt. of Uncont. Facts 12, ECF No. 83-1. She submitted a written grievance on August 23, 2019. Id. On September 4, 2019, after a meeting with her supervisor Ruiz, she accepted Ruiz's proposed resolution to engage in effective communication to prevent misunderstandings. Id.  at 12-13.

Meanwhile, on August 27, 2019, Constant emailed Juncker to complain about Snowton's alleged behavior in court and during the office meeting with Ruiz and Constant on August 22, 2019. Id.  at 13; Oct. 11, 2019, Report, Def.'s Ex. 6, ECF No. 77-4, at 10-11. This resulted in an investigation. Oct. 11, 2019, Report, Def.'s Ex. 6, ECF No. 77-4, at 1.

When Snowton was shifted to Case Supervisor on September 30, 2019, her access to the BI Total Access System[3] was removed. She was not told this would happen. Snowton Depo. 101-02, Pl.'s Ex. 1, ECF No. 83-2, at 22-23. She was alerted by Luis Bustamente (a Probation Officer II) on September 27, 2019 (her last day as ADU Supervisor) that she had alerts in the BI System that needed to be closed out. Pl.'s Resp. to Def's Stmnt. of Uncont. Facts 20, ECF No. 83-1. When she could not access the BI System on Monday September 30, 2019, she called customer service at BI for assistance. Snowton Depo. 99, Pl.'s Ex. 1, ECF No. 83-2, at 20. Per a recording of that conversation, she told BI she had been removed in error and that she needed access so she could train her replacement Lashaunda Thomas. BI Customer Service Call Recording, Def.'s Ex. 7-A. BI restored her access. Snowton Depo. 100, Pl.'s Ex. 1, ECF No. 83-2, 21. On October 4, 2019, Bustamante ran a user report for an unrelated issue and discovered that Snowton had accessed the BI system between September 30, 2019, and October 4, 2019. Oct. 14, 2019, Report, Def.'s Ex. 7, ECF No. 77-4, at 22. He brought the matter to the attention of Colleen George Conley, the PDI Supervisor. Id. A separate investigation was conducted into Snowton's purportedly unauthorized access to the BI System. Id. at 15-38. In Snowton's written responses during the investigation, she stated that she logged on to try and close out her alerts and she stated that she did not think there was a problem with restoring access because she might need to help out if Thomas was out. Id. at 23-24. The summary judgment evidence shows, however, that Snowton did not close out her alerts after regaining access to the BI System on September 30, 2019. Ruiz Aff. ¶¶14, 16-19, Def.'s Ex. 36, ECF No. 77-6, at 95-96.[4] Additionally, she did not train Thomas on the BI System despite her statements to BI customer service. Oct. 14, 2019, Report, Def.'s Ex. 7, ECF No. 77-4, at 33.

---

[3] This is the system for GPS monitoring of the location of the juvenile probationers in ADU. Trosclair Depo., Def.'s Ex. 4, ECF No. 77-3, at 103.

[4] Snowton presents no evidence to counter Ruiz's assertion, which Ruiz based on BI System records.

Snowton also filed a grievance on October 11, 2019, the same day she learned of the investigation into her alleged security breach of the BI System. Oct. 2019 Grievance, Def.'s Ex. 41, ECF No. 77-7, at 17-20; Oct. 14, 2019, Report, Def.'s  Ex. 7, ECF No. 77-4, at 28.  She complained of retaliation and harassment following her August 23, 2019, grievance. Oct. 2019 Grievance, Def.'s Ex. 41, ECF No. 77-7, at 18. Snowton did not accept Assistant Director Christopher Trosclair's proposed solution, but on October 28, 2019, she accepted Juncker's proposed solution of opening lines of communication. Id. at 19. He noted he did not have evidence of cronyism or harassment as claimed in the grievance. Id.

Snowton received a pre-disciplinary hearing notice dated November 5, 2019. Pl.'s Resp. to Def.'s Stmnt. Of Uncont. Facts, ECF No. 83-1, at 29. The notice listed various policy violations. Nov. 5, 2019, Letter, Def.'s Ex. 3, ECF No. 77-3, at 74. It also described the conduct at issue, including some vague references like "[e]ngaging in prohibited, discourteous, and unprofessional conduct," as well as factually specific descriptions such as "[e]ngaging in a verbal argument with an Assistant District Attorney following a Juvenile Court Hearing," "[o]btaining unauthorized access to the BI Total Access system," and "[m]aking statements which contradict what was reported by staff and your contact with BI Customer Service." Id.

A pre-disciplinary hearing was held on November 20, 2019. Pl.'s Resp. to Def.'s Stmnt. Of Uncont. Facts, ECF No. 77-2,  at 30. The hearing lasted over two hours. Pre-Disciplinary Hearing Recording, Def.'s Ex. 10. Snowton claims she was cut off from speaking during the meeting. Of the numerous time stamps in the recording that she cites, most reflect a back and forth conversation and will not be recounted here. Of the remainder, in one instance, at time stamp 22:33, she began talking but Juncker began discussing a different topic. At time stamp 23:31 Juncker stopped Snowton from discussing what she heard had occurred in court before she arrived.

At time stamp 1:54:08 he cut off her discussion of being a team player saying it was irrelevant. At time stamp 2:04:30, Juncker says she can submit additional information after the hearing. Snowton claims that she tried to present Juncker with a letter from Juvenile Court about her performance, but he did not accept it.[5] She admits, though, that she was able to present evidence in support of her position on the BI System issue. Pl.'s Memo in Opp., ECF No. 83, at 52.

On November 26, 2019, Snowton received a disciplinary letter advising that she would be demoted to Juvenile Home Detention Supervisor effective November 30, 2019. Pl.'s Resp. to Def.'s Stmnt. of Uncont. Facts, ECF No. 77-2, at 30. Her pay would remain the same, but she would be classified as Probation Officer II. Id.  Her new schedule was 4pm to midnight. Pl.'s Interrog. Resp., Def.'s Ex. 2, ECF No. 77-3, at 50. There is no dispute that this was an adverse employment action. Snowton initiated an appeal of the demotion through the administrative process.

Meanwhile, Snowton requested sick leave for her own health condition from November 30, 2019 – December 6, 2019. Pl.'s Resp. to Def.'s Stmnt. of Uncont. Facts, ECF No. 77-2, at 30. She then requested FMLA leave for the period from December 7, 2019, through June 7, 2020, citing her husband's health condition. Id.  at 31. On December 16, 2019, Snowton's attorney sent a letter demanding an immediate response to Snowton's FMLA request and advising that defendants were in violation of Jefferson Parish Policy and federal and state law. Dec. 16, 2019 Letter, Pl.'s Ex. 13, ECF No. 83-15. On December 17, 2019, HR Manager Tilton called Snowton and advised her that her FMLA leave was approved. Pl.'s Resp. to Def's Stmnt. of Uncont. Facts,

---

[5] Snowton cites pages 125-26 of her own deposition, but it appears she erroneously failed to include the cited pages in her exhibits. She also claims, without citing to evidence, that Trosclair told her that he instructed her not to discuss the investigation with anyone and that she was never told that she could gather statements or speak to witnesses to use in her defense. This unsupported assertion cannot be considered. Of note, there is no dispute that the pre-disciplinary hearing notice informed Snowton that she "would be given the opportunity to tell [her] side of the story and present any evidence relative to the charges being made . . . ." Nov. 5, 2019 Letter, Def.'s Ex. 3, ECF No. 77-3, at 74.

ECF No. 77-2, at 31. Jefferson Parish's counsel sent an email to Snowton's counsel on December 30, 2019, reporting that he had received information from Snowton's husband's doctor's office indicating that she would be able to return to work on January 1, 2020. Dec. 30, 2019, Letter, Pl.'s Ex. 15, ECF No. 83-16. He advised further that Snowton was expected to contact her supervisor and return to work. Id. Snowton did not return to work in January 2020. On February 26, 2020, Snowton's counsel received a letter dated February 17, 2020, advising that Snowton's FMLA leave would expire on Friday, February 28, 2020, and she was required to return to work on February 29, 2020, or would be presumed resigned. Feb. 17, 2020, Letter, Pl.'s Ex. 16, ECF No. 83-17, at 2. The letter also noted that although Snowton did not return to work on January 1, 2020, Jefferson Parish had not revoked her FMLA leave. Id.

On February 28, 2020, at 3:35 p.m., Snowton emailed Juncker requesting additional FMLA leave and a reasonable accommodation. Snowton Feb. 28, 2020, Email, Pl.'s Ex. 17, ECF No. 83-18. Juncker responded that she had exhausted her 12 weeks of FMLA leave and that additional leave was not a reasonable ADA accommodation. Juncker Feb 28, 2020, Email, Pl.'s Ex. 18, ECF No. 83-19. The following Monday, though, Tilton emailed Snowton stating that Juncker's email about her ADA accommodation request had been sent in error. Mar. 2, 2020, Email, Def.'s Ex. 51, ECF No. 77-7, at 50. She provided Snowton with ADA forms to complete to request a reasonable accommodation. Id. Nonetheless, her resignation was processed and Snowton received a COBRA package, which she says Tilton told her to ignore.[6] Snowton Depo. 28, Pl.'s Ex. 1, ECF No. 83-1, at 14.

---

[6] Snowton received a letter via certified mail on January 8, 2020, that noted that she would need to start paying for her benefits on January 11, 2020. Status of Emp. Benefits Form, Def.'s Ex. 50, ECF No. 77-7, at 45. She never made any payments. Snowton Depo. 27, Pl.'s Ex. 1, ECF # 83-1, at 13. Nonetheless, there is no dispute that she remained enrolled for health insurance benefits until March 2020. A Jefferson Parish HR Benefits Specialist sent Snowton an email to her work email address on March 19, 2020, outlining the amounts she needed to pay to reinstate benefits effective March 1, 2020. Jones Mar. 12, 2020, Email, Def.'s Ex. 53, ECF # 77-7, at 55.

In March and April 2020, Snowton and the HR department exchanged several emails regarding the ADA accommodation paperwork, with HR requesting supplemental information from her physicians and Snowton reporting that her appointments had been rescheduled. Email String, Def.'s Ex. 53, ECF # 77-7, at 54-61. The last correspondence is dated May 22, 2020, from Snowton to Tilton advising that her doctor was not seeing patients and that she had lost benefits. Id. at 61.

In a letter dated June 9, 2020, Juncker notified Snowton that she was presumed resigned on June 8, 2020, because she did not present for work. June 9, 2020, Letter, Def.'s Ex. 22, ECF No. 77-5, at 93-95. Juncker testified that no prior notice was sent to Snowton because she knew that June 7, 2020, was her last day of leave without pay. Apr. 21, 2021, Appeal Hr'g Tr. 118, Pl.'s Ex. 14, ECF No. 83-15, at 28. This appears to be based on the fact that Snowton originally requested leave from December 6, 2019, through June 7, 2020.

Snowton appealed the presumed resignation through the state administrative procedure alleging that she had experienced retaliation as a whistleblower for appealing her demotion and alleging discrimination, retaliation, and harassment. Pet. of Appeal, Pl.'s Ex. 24, ECF No. 83-25. A hearing was held on November 17, 2020, and the appeal was denied on June 15, 2021. Judgment, Def.'s Ex. 14, ECF No. 77-5. The referee found she had been granted leave without pay from February 28, 2020, through June 7, 2020. Id.  He found no evidence of discrimination or revenge for being a whistleblower. Id. He found that Jefferson Parish made a compelling case that no further leave without pay was warranted because it was without a critical employee and other employees had been required to fill in for Snowton. Id. The referee also dismissed her appeal of the demotion as moot due to the finding that she had resigned. Id. The Personnel Board affirmed on November 18, 2021. Order, Def.'s Ex. 16, ECF No. 77-5.

Snowton appealed the decision regarding the presumed resignation to the Louisiana Court of Appeals for the Fifth Circuit. Appeal Decision, Def.'s Ex. 18, ECF No. 77-5, at 33-95. In a 30-page decision, the court of appeal affirmed the decision of the Personnel Board. Id. at 63-64.

Snowton timely filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving a Right to Sue letter, she initiated this federal lawsuit on July 6, 2021, against Jefferson Parish, Juncker, Trosclair, Tilton, and Ruiz. Snowton voluntarily dismissed Tilton and Ruiz in March 2022. On September 15, 2022, Magistrate Judge Douglas granted in part the defendants' Partial Motion to Dismiss for Failure to State a Claim, dismissing Snowton's claim for punitive damages under 42 U.S.C. § 1983, her hostile work environment claim under Title VII of the Civil Rights Act and the Louisiana Employment Discrimination Law ("LEDL"), and her failure to accommodate claim under the Americans with Disabilities Act. Her remaining claims for procedural and substantive due process violations under § 1983 and for Family Medical Leave Act ("FMLA") interference were allowed to proceed and she was ordered to amend her Complaint to plead a claim for FMLA retaliation. Defendants did not move to dismiss Snowton's claims for race discrimination under §1981, gender discrimination under Title VII and the LEDL, race discrimination under Title VII and the LEDL, and retaliation under Title VII and the LEDL, which also remain pending.

The case was reassigned to the undersigned Magistrate Judge van Meerveld on December 27, 2022. An amended scheduling order was issued in March 2023 setting trial to begin on January 8, 2024. Presently pending before the Court are the Defendants' Motion for Summary seeking dismissal of all Snowton's claims (Rec. Doc. 77) and Snowton's Motion for Partial Summary Judgment seeking dismissal of certain defenses (Rec. Doc. 71).

<u>Law and Analysis</u>

*1. Standard for Summary Judgment*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." <u>Engstrom v. First Nat. Bank of Eagle Lake</u>, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." <u>Daniels v. City of Arlington, Tex.</u>, 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013) (quoting <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." <u>Armstrong v. City of Dallas</u>,

997 F.2d 62, 67 (5th Cir. 1993). Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

2. *Procedural Due Process*

To establish a procedural due process claim, plaintiff must "show that (1) she was deprived of a liberty or property interest protected by the due process clause, and (2) that she was deprived of that interest without constitutionally adequate process." LaCroix v. Marshall Cty., Mississippi, 409 F. App'x 794, 803 (5th Cir. 2011).

"In Louisiana, a permanent classified civil service employee has a protected property interest in her job." Wallace v. Shreve Mem'l Libr., 79 F.3d 427, 431 (5th Cir. 1996); see Hudson v. Dep't of Pub. Safety & Corr., Louisiana State Penitentiary, 96-0499 (La. App. 1 Cir. 11/8/96), 682 So. 2d 1314, 1318. There is no dispute here that Snowton had a protected property interest in her employment with Jefferson Parish.

In the case of a public employee, due process requires that the employee be provided "some kind of a hearing" prior to termination. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, (1985). "A satisfactory pretermination 'hearing' need not be elaborate, for such a hearing is merely designed to prevent the employer from making a mistake." Browning v. City of Odessa, Tex., 990 F.2d 842, 844 (5th Cir. 1993). At a minimum, the employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546; see Myrick v. City of Dallas, 810 F.2d 1382, 1386 (5th Cir. 1987) (finding sufficient opportunity to be heard where plaintiff provided written account of what she believed had happened).

With regard to the demotion, defendants argue that adequate notice was provided to Snowton via the November 5, 2019, pre-disciplinary hearing letter. They argue further that Snowton had a sufficient opportunity to be heard during the pre-termination hearing on November 20, 2019. They note that when her administrative appeal of the demotion was dismissed as moot, she did not pursue the state administrative process further. They insist that this precludes her from challenging the adequacy of the state post-deprivation remedy as to the demotion.

With regard to the presumed resignation, defendants submit that Snowton administratively appealed the decision and her appeal was heard by a Referee and the Personnel Board. This hearing included testimony from Snowton and various Jefferson Parish employees. Snowton's counsel was present and cross-examined witnesses. Snowton appealed the  dismissal of her appeal, and the Louisiana Fifth Circuit Court of Appeal affirmed.

Snowton argues that the pre-disciplinary notice dated November 5, 2019, was inadequate because it was vague and she was unable to determine the policies she had been accused of violating because so many were listed. She argues further that she did not receive due process during the hearing on November 20, 2019, because Juncker cut her off. She says topics outside the scope of the notice were discussed during the hearing. She claims, without presenting supporting evidence, that she was told not to discuss the investigation with others. She complains that during his investigation, Trosclair did not contact the other witnesses she identified for him and, at Juncker's instruction, relied only on the statements of Snowton, Ruiz, Constant, and Dr. John Ryals (who was present in the courtroom during the hearing). Snowton claims, without presenting supporting evidence, that Juncker testified that he would not allow her to obtain statements in her defense. She admits that Juncker listened to a recording of the August 22, 2019, courtroom proceeding but complains that he did not obtain a transcript. She argues her side of the story as to

the BI System access issue:  that she tried to log in and was not able to so she called to get access

so she could complete some tasks. She complains that no one presented evidence that she was

advised that she was deactivated from the system. She says she presented evidence that there was

no protocol for obtaining access to the BI system and that Bustamante regularly obtained access

to the BI system (though she has not produced that evidence to the Court). She also complains that

she was not provided with a post-demotion hearing. She does not address defendants' argument

that she failed to pursue an administrative appeal to the Louisiana Fifth Circuit Court of Appeal.

The Court finds that Snowton has identified no genuine issue of fact precluding summary

judgment dismissing her procedural due process claim. The November 5, 2019, letter provides

adequate notice of the accusations against her. It references specific policies and it references

specific conduct. Snowton was familiar with the two incidents described in the letter (the argument

with Constant and unauthorized access of the BI System) because she had been involved in the

investigation of those incidents. And these are the two incidents that were discussed during the

November 20, 2019, pre-disciplinary hearing. Snowton says she was asked about issues outside of

those two incidents, but the examples she lists are clearly related to her disagreement with Constant

about his recommendation regarding the probationer during the court hearing.[7] Accordingly, they

are related to the incidents referenced in the letter and not outside its scope. Moreover, there is no

dispute that the November 26, 2019, disciplinary letter does not reference conduct outside of the

two referenced incidents.  Further, although the November 5, 2019, pre-disciplinary hearing letter

does not cite the subparts of the policies implicated, the list of conduct makes clear that Snowton

---

[7] She says that the following were discussed: "whether Snowton disagreed with ADA Constant's position on the case during the August 22, 2019 drug court hearing in Judge Burmaster's courtroom; what the recommendations were made by various members of the Drug Court team for the juvenile during the drug court hearing; why the juvenile was placed in IPP; pending charges against the juvenile; who signed off on the assessment for the juvenile; her position as to revocation of the juvenile; questioning Judge Burmaster's judgment in the case; her opinion whether the Judge made the right decision; and when the juvenile's probationary period would expire." Pl.'s Mem. in Opp'n 48, ECF No. 83.

is being accused of engaging in prohibited, discourteous, and unprofessional conduct; engaging in behavior constituting insubordination; and demonstrating poor judgment. Combined with the factual accusations, the November 5, 2019, letter provided Snowton with notice of the charges against her.

The Court further finds that the pre-disciplinary hearing on November 20, 2019, offered Snowton with sufficient opportunity to be heard. The hearing lasted over two hours. The disciplinary letter includes a summary that reports that Snowton read from her August 29, 2019, statement. The summary shows that not only did Snowton have the opportunity to present her side of the story (that she did not say a word during Drug Court but only shook her head, that Constant was infuriated with the Judge, that she disagreed with Constant's position and why, that she denied saying Constant's arguments were inappropriate, that she contacted BI to find out why she could not log on, that no one told her she was not allowed to have access to the BI System, etc.) but also that Juncker considered her side of the story in making his decision.

The recording also demonstrates that Snowton had the opportunity to speak. She alleges that she was cut off by Juncker. However, the majority of the cited portions of the recording reflect questions and answers that overlap at times but without Juncker preventing Snowton from speaking. Only two instances do so. In one instance Juncker stops the conversation because Snowton is beginning to discuss what she heard had occurred in the courtroom before she arrived. In the other, he stopped her discussion of how she had been a team player, saying this was not relevant to his decision. These two occurrences do not create a fact issue as to whether Snowton had the opportunity to be heard. Importantly, at the end of the hearing Juncker states that Snowton can send him any additional information.

Snowton also claims that Juncker would not accept a letter from the Drug Court about her performance, but she cites no supporting evidence and this cannot defeat summary judgment. Even if such evidence exists, such a refusal alone is insufficient to conclude that Snowton was not permitted to share her position in light of the oral and written statements she was able to make and considering that the letter concerned her general performance in Drug Court and did not bear on the specific incidents at issue.

Also without attaching supporting evidence, Snowton claims that she was prohibited from obtaining witness statements. This unsupported assertion cannot create a fact issue. And even if she was told—as she claims—not to discuss the investigation with others, this does not create a *material* issue of fact as to whether she had the opportunity to be heard. She admits, for example, that she presented evidence in support of her position on the BI System access issue, belying her argument that she was somehow prevented from presenting her side of the story. She read a statement at the hearing and had the opportunity to speak. Moreover, she does not explain how, let alone present any evidence to support finding, the statement of another witness could have influenced the development of facts at the hearing. She mentions 11 witnesses relative to the incident with Constant, but there is no dispute that this incident primarily occurred in Ruiz's office where only Ruiz, Constant, and Snowton were present. The Court finds the pre-disciplinary hearing satisfied Snowton's procedural due process rights.

Snowton has not identified any genuine issue of material fact regarding whether the November 5, 2019, letter provides constitutionally adequate notice or whether the pre-disciplinary hearing provided a constitutionally adequate opportunity to be heard. Accordingly, summary judgment dismissing Snowton's procedural due process claim is appropriate.

Further, to the extent Snowton claims that the lack of a hearing on her post-demotion appeal amounts to a failure of due process, the Court disagrees. Snowton had the opportunity to appeal the Personnel Board's decision to the Louisiana Fifth Circuit Court of Appeal but did not do so. She cannot now claim that process was inadequate. Myrick, 810 F.2d at 1388 (holding that a plaintiff "cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy").

It does not appear that Snowton challenges the adequacy of her administrative appeal hearing regarding her presumed resignation. To the extent she does, though, the Court finds that this hearing was also more than adequate. Snowton and several Jefferson Parish witnesses testified. And Snowton was represented by counsel who questioned and cross-examined witnesses.

The Court finds that Juncker is entitled to summary judgment on Snowton's procedural due process claim. Snowton does not appear to contest defendants' argument that she has no evidence to support a procedural due process violation by Trosclair. This claim must be dismissed as well.

*3. Substantive Due Process*

To establish a substantive due process claim against her employer, plaintiff must show that "(1) that [she] had a property interest/right in [her] employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." Harrington v. Harris, 118 F.3d 359, 368 (5th Cir. 1997). A public employer's decision was arbitrary and capricious when it "'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys., 809 F.3d 231, 240 (5th Cir. 2015) (quoting State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker, 142 F.3d 813, 819 (5th Cir. 1998)). "The fact that 'reasonable minds could disagree on the propriety of [the plaintiff]'s

termination' is insufficient to defeat a public official's qualified immunity against a substantive due process claim." Lewis v. Univ. of Texas Med. Branch at Galveston, 665 F.3d 625, 631 (5th Cir. 2011) (quoting Walker, 142 F.3d at 819). "The plaintiff must 'demonstrate that the abuse of power by the state official shocks the conscience.'" Id.  (quoting Marco Outdoor Advert., Inc. v. Reg'l Transit Auth., 489 F.3d 669, 672 n. 3 (5th Cir. 2007).

The Court finds that Snowton cannot establish a material issue of fact as to whether her substantive due process rights were violated. Although the evidence underlying Juncker's decisions is disputed, there is substantial evidence supporting Juncker's decisions. Thus, it cannot be concluded that his decisions were made without a basis in fact or that they were arbitrary and capricious.

With regard to the demotion decision,[8] Juncker's conclusions about the argument with Constant are supported by the statements of Ruiz, Ryals, and Constant. There is no evidence to suggest that these statements were fabricated or made in bad faith. Nor was it unreasonable to limit the investigation to these statements (along with Snowton's statement) when most of the alleged unprofessional behavior occurred in Ruiz's office after the court hearing where only Ruiz, Constant, and Snowton were present. Similarly, evidence related to the BI System access claim supports Juncker's findings, even if it was possible that he could have made an alternate conclusion. The recorded phone call indicates Snowton claimed she needed access to train Lashauna Thomas. BI Customer Service Call Recording, Def.'s Ex. 7-A.[9] But Thomas provided a statement during the investigation that she never was trained by Snowton. D's Ex. 7, PDF p. 33.

---

[8] Snowton does not argue that Juncker's decision to presume she had resigned was arbitrary and capricious and any such argument has been waived.

[9] She says she thinks she was taken out of the system but she was supposed to stay in; talks about a change in supervisors; "I'm still helping her out, I'm training her;" at 5:46; says she's still a supervisor; "I was trying to teach her the system," at 6:00. BI Customer Service Call Recording, Def.'s Ex. 7-A.

There is no contrary evidence. And in one email statement during the investigation, Snowton says she logged in to finish closing out her alerts. Oct. 14, 2019, Report, Def.'s Ex. 7, ECF No. 77-4, at 23.  But the undisputed evidence is that she never closed out the files. Id. at 32; Ruiz. Aff. ¶ 17-19, Def.'s Ex. 36, ECF No. 77-6 at 95-96. Juncker's conclusion that Snowton had been dishonest is supported by substantial evidence. Snowton's claim that she did not believe there was anything wrong with accessing the system and that she did not know she was not supposed to access the system might support a different conclusion, but it is not sufficient to result in a finding that Juncker's decision was arbitrary and capricious.

The Court finds that Juncker is entitled to summary judgment on Snowton's substantive due process claim because she has not identified a genuine issue of material fact on whether Juncker's decision was arbitrary and capricious. Snowton does not appear to contest defendants' argument that she has no evidence to support a substantive due process violation by Trosclair. This claim must be dismissed as well.

### 4.  *Monell* Liability

In addition to her individual claims against Juncker and Trosclair, Snowton argues that Jefferson Parish is liable for due process violations via the doctrine of municipal liability under Monell. A local government is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). To establish an official policy:

> the plaintiff must show (1) A policy statement, ordinance, regulation, or decision
> that is officially adopted and promulgated by the municipality's lawmaking officers
> or by an official to whom the lawmakers have delegated policy-making authority;
> or (2) A persistent, widespread practice of city officials or employees, which,

18

> although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984).

First, the Court has found that on the undisputed facts, Snowton cannot state a claim for a procedural or substantive due process violation. Thus, no claim stands against Jefferson Parish either.  Moreover, Snowton has not presented any evidence of a policy, practice, or custom that violates due process. At most she alleges that some policies were not followed or that the specific facts of her case resulted in a due process violation, but she does not present evidence to support finding a custom of violating due process or cite an official policy that does so. Jefferson Parish is entitled to summary judgment dismissing Snowton's §1983 claim for due process violations against it.

5.  *Race and Gender Discrimination under §1981 (as to race only), Title VII, and the LEDL*

"[E]mployment discrimination claims under Title VII, §1981, and the Louisiana Employment Discrimination Law are analyzed under the same standard." Turner v. Kansas City S. Ry. Co., 675 F.3d 887, 891 n.2 (5th Cir. 2012), as revised (June 22, 2012). "[A] plaintiff may present his case by direct or circumstantial evidence, or both." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 896 (5th Cir. 2002). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Id. at 897.  "If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus." Id. at 896.  If the plaintiff relies on circumstantial evidence of discrimination, then the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411

U.S. 792, 802 (1973), applies. Id.  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

In a disparate treatment case like this one, plaintiff establishes her prima facie case by showing that "she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005). If the plaintiff meets her burden, "the employer must respond with a legitimate, nondiscriminatory reason for its decision." Russel, 235 F.4d at 222.  "This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Id.  "If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination." Sandstad, 309 F.3d at 897. "The plaintiff, who always has the ultimate burden, must then 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" Outley v. Luke & Assocs., Inc., 840 F.3d 212, 216 (5th Cir. 2016) (quoting Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 233 (5th Cir. 2015)).

   *a. Comparators*

Here, the defendants concede that the first three elements of Snowton's prima facie case have been met. They argue that she cannot show she was treated differently from others similarly situated. "Employees are similarly situated when they (1) 'held the same job or responsibilities,' (2) 'shared the same supervisor or had their employment status determined by the same person,' and (3) 'have essentially comparable violation histories.'" West v. City of Houston, Texas, 960 F.3d 736, 740 (5th Cir. 2020) (quoting Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir.

2009)). But the "'nearly identical' standard is not equivalent to 'identical.'" <u>Lee</u>, 574 F.3d at 260 n. 25. To avoid summary judgment, the plaintiff must present "sufficient evidence that would permit a reasonable fact-finder to conclude that the plaintiff and other employees are similarly situated." <u>Morris v. Town of Indep.</u>, 827 F.3d 396, 402 (5th Cir. 2016).

Snowton identifies ten potential comparators. But on the summary judgment evidence, none of them can qualify as similarly situated. Only four of the alleged comparators were supervisors in the same position of Probation Officer III as Snowton. The first is Colleen Conley, who allegedly used the word "wigger" but was not formally disciplined and allegedly made an outburst in court and was only admonished by the Court but not formally disciplined. As to the court outburst, it is undisputed that Juncker did not have notice of the incident. Snowton also alleges, without citation to evidence, that Conley barged into an office and started yelling at a probationer and that "trackers" were not seeing probationers under her supervision but that Conley was not disciplined. There is no evidence to support finding that Juncker was on notice of this conduct either. In Snowton's case, in contrast, Juncker was alerted to the disagreement between Constant and Snowton by Constant.[10] Moreover, the Snowton incident involving access to the BI system is entirely different from Conley's alleged outbursts and her use of the word "wigger" because it involved a finding of untruthfulness. Conley could not be found similarly situated.

With regard to Krista Jerome who allegedly told a probation officer not to worry about a juvenile's warrant and who allegedly allowed another probation officer to send emails on her behalf, Snowton has presented no evidence to support these assertions or to support finding that any supervisors were made aware of the alleged conduct. Jerome cannot be found similarly situated.

---

[10] In any event, the occurrence of these incidents is unsupported by any evidence.

Similarly, Snowton presents no evidence to support her allegation that Gloria Meisky was very argumentative and threw a temper tantrum in a meeting with an Assistant District Attorney or that she allowed Duplessis to be insubordinate. Nor is there any evidence that supervisors were made aware of the alleged conduct. Meisky cannot be found similarly situated.

The same holds true for Allan Kagan who allegedly failed to ensure a subordinate performed his job and who was on the BI System access list but was not disciplined for having access. Snowton has not provided evidence to support her assertions or to show that supervisors were made aware of the alleged conduct. Moreover, although Kagan allegedly had access to the BI System, these allegations do not compare to Snowton who was disciplined not for having access but for regaining access through allegedly false statements to BI.

The remaining proposed comparators were not serving as Probation Officer III. Snowton does not explain why they would nonetheless qualify as comparators. In other words, she has not shown that their employment status was determined by the same individual. This alone precludes a finding that they are similarly situated. Moreover, even the facts alleged do not establish similar conduct.

Snowton alleges that when Ronquille filed a grievance complaining that she was being sabotaged by Drug Court in December 2020, her grievance was taken seriously and she was not required to show proof of her complaints. She offers no evidence to support finding that Ronquille was not required to show proof. Moreover, Snowton accepted the proposed solutions of her supervisor as to the August 2019 complaint and after rejecting her supervisor's solution to her October 2019 grievance, she accepted the resolution proposed by Juncker. Oct. 2019 Grievance, Def.'s Ex. 39, ECF #77-7, at 1-6; Aug 2019 Grievance, Def.'s Ex. 41, ECF # 77-7, at 17-18. Ronquille's complaint had the same result—it was elevated to Juncker's level and Ronquille

accepted his solution. Ronquille Grievance, Pl.'s Ex. 28, ECF No. 83-28, at 3. Although the solution differed—in Ronquille's case Juncker granted her request to be moved out of Drug Court while in Snowton's case her complaints about workplace harassment and her suggestions for improvements in culture were addressed by proposals to improve communication—that appears to reflect the fact that the solution requested by each complaint differed.

Snowton also asserts that Ronquille was accused of calling the probationers monkeys on Facebook "in the past" in the February/March 2019 anonymous complaint. Anon. Compl., Def.'s Ex. 55, ECF # 77-7, at 68. While this might be considered similar to Snowton's disagreement with Constant, it is not similar to the issue with Snowton's BI System access which involved alleged dishonesty.[11] Considering that Ronquille had a different title and position than Snowton and that the alleged inappropriate conduct is not similar to the totality of Snowton's conduct, there is no basis to find that Ronquille was similarly situated.

Snowton also names Mark Duplessis as a potential comparator because he complained about Ruiz and his co-workers on social media and administered medication to a student against school policy without being disciplined. These incidents are not comparable to the issues for which Snowton received discipline. Snowton also asserts that Duplessis got into a verbal altercation with another probation officer which resulted in a coach and counseling and a deduction on his evaluation from 2 to 1 in the category of "working with others." CCS Form, Pl's Ex. 29, ECF No. 83-30, at 1, 12. As with Ronquille, Duplessis was not a Probation Officer III and although the verbal altercation is similar to Snowton's argument with Constant, Duplessis did not engage in any

---

[11] The issue did receive some attention. The investigation into the anonymous complaint concluded that although managers are not responsible for employee's social media postings, any reports of racist postings that are detrimental to the professional image of the Parish must be reported for investigation by Human Resources. May 2019 Report, Def.'s Ex. 56, ECF No. 77-7, at 78. It also noted that the complaint had not provided any evidence of the allged posting by Ruiz or the approximate date of it. Id.

conduct similar to the alleged dishonesty involving the BI System. There is no basis to find Duplessis was similarly situated.

Snowton also asserts that Stacey St. Pierre is a comparator. She too was a Probation Officer II, not Probation Officer III like Snowton. Snowton alleges that a judge reported St. Pierre was cancelling hearings in 2001 and that several years later Snowton investigated St. Pierre for putting inaccurate information into reports. Again, these performance related issues are dissimilar. The first incidents occurred almost 20 years before Snowton's experiences. It is unclear when the latter issues occurred or what resulted from the investigation. There is no evidence from which to conclude St. Pierre was similarly situated to Snowton but treated differently.

Snowton complains that Lynn Shields was promoted to Home Detention Supervisor but was allowed to work the day shift. Shields was tardy 70 times and was eventually demoted with no reduction in pay and no change in shift. Snowton says Shields was given compassion when she lost her husband. Again, Shields was not a Probation Officer III like Snowton. Snowton was demoted to the Home Detention Supervisor position, but she never worked in that position. Moreover, the tardiness issue is not similar to Snowton's conduct. And Snowton's claims of more compassion for Shields are unsupported and cannot support her prima facie case. There is no basis to conclude that Shields was similarly situated.

Melissa Riddick is also not a comparator. Not only did she hold a subordinate position of Probation Officer II, but the mere fact that she had access to the BI System is not comparable to Snowton's conduct which involved alleged deceit.

Snowton also asserts that Luis Bustamente is a comparator. Again he held a subordinate position of Probation Officer II. Moreover, none of Bustamente's alleged conduct is supported by any evidence. Even if Snowton's mere allegations were considered, the allegation that Bustamente

went outside the chain of command is not remotely comparable to Snowton's conduct. Snowton also claims that Ruiz told her to change Bustamente's performance review so he could get a 6.5% raise because he had performed community service, but she says she also performed community service but never received more than a 5% raise. This unsupported allegation cannot establish Snowton's prima facie case, it lacks any detail from which an assessment of similarity can be made, and more importantly, it is unrelated to any of the issues alleged in the complaint. It is not enough to create a genuine and material disputed issue as to whether Bustamente could be a comparator. He could not.

The Court finds that Snowton has not identified a genuine issue of material fact as to whether another similarly situated employee outside of her protected class was treated differently. Therefore, she has failed to establish her prima facie case of discrimination and summary judgment is appropriate.

  b. *Legitimate Reason and Pretext*

Even if one or more of the suggested comparators might be similarly situated to Snowton, she has failed to raise a basis for showing that Jefferson Parish's legitimate reason for her demotion is pretext.

When assessing whether the employer has established a legitimate, nondiscriminatory reason for its decision, "'[t]he relevant inquiry is not whether [the employer's] assessment of [the employee] was accurate because 'even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.'" Cramer v. NEC Corp. of Am., 496 F. App'x 461, 466 (5th Cir. 2012) (quoting Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). The question is whether the employer's assessment of inadequate performance,

"accurate or not, was the real reason for her termination." Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999).

"To establish pretext, [the employee] must show that [the employer's] 'proffered explanation is false or unworthy of credence.'" Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). "To carry that burden, the plaintiff must produce substantial evidence of pretext." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Auguster v. Vermilion Par. Sch. Bd., 249 F.3d 400, 402–03 (5th Cir. 2001)). Thus, "[i]n deciding whether summary judgment is warranted, a court should consider, among other things, 'the probative value of the proof that the employer's explanation is false' and 'any . . . evidence that supports the employer's case.'" Jones v. Gulf Coast Rest. Grp., Inc., 8 F.4th 363, 369 (5th Cir. 2021) (quoting Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020)). "Without additional support, an employee's subjective belief that discrimination is the basis of an employment decision is not sufficient to survive summary judgment following an employer's adequate showing of a non-discriminatory reason for the action." Clark v. Sw. Bell Tel. Co., No. CA3:96-CV-2913-BC, 1998 WL 292366, at *3 (N.D. Tex. May 27, 1998). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext" either. LeMaire v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007).

Snowton does not appear to dispute that Jefferson Parish has put forth a legitimate reason for its decision to demote her. They cite Snowton's actions in connection with District Attorney Constant's complaint and her BI System access. Snowton insists their reason is pretextual. She argues that Jefferson Parish has put forth multiple and shifting stories about why she was demoted. But she does not identify any changes in its explanation. She argues that Juncker had absolutely

26

no evidence to support his belief that Snowton lied to him or that she was insubordinate, unprofessional, or lacked sound judgment.

However, as discussed in the substantive due process section, there is substantial evidence to support Juncker's conclusions. Although there was also some evidence supporting Snowton's interpretation of events (primarily her own testimony), this does not render Juncker's assessment of the evidence false and unworthy of credence. Critically, Snowton has offered no evidence to support finding that Juncker was motivated by a discriminatory purpose. She can cite only to her own subjective belief that Juncker discounted her testimony and believed the other evidence because of her race. This is not enough. The Court notes further that it is undisputed that Juncker promoted Snowton to Probation Officer III. This belies her argument that Juncker demoted her because of her race.  Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 421–22 (5th Cir. 2009) (describing the rebuttable presumption that "that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue").

The Court finds that even if Snowton had established her prima facie case, she could not avoid summary judgment because she has presented no evidence to support finding that Jefferson Parish's stated reason is pretext for discrimination.

6. *Retaliation under Title VII and the LEDL*

Under Title VII,[12] it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful

---

[12] Because "Louisiana's anti-discrimination statute, La. Rev. Stat. Ann. § 23:301 et seq., is 'substantively similar' to Title VII [] and Louisiana courts routinely look to the federal jurisprudence for guidance," the court considers both plaintiff's Title VII and LEDL retaliation claim under the same standard. McCoy v. City of Shreveport, 492 F.3d 551, 556 n. 4 (5th Cir. 2007).

employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013).

"Protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" E.E.O.C. v. Rite Way Serv., Inc., 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. §2000e-3(a)) (alteration in original). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). For example, the Fifth Circuit has found that complaints about wages paid, hours of work, and working conditions do not amount to protected activity under Title VII. Allen v. Envirogreen Landscape Pros., Inc., 721 F. App'x 322, 326–27 (5th Cir. 2017), as revised (Dec. 7, 2017).

To establish an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The purpose of the anti-retaliation provisions of Title VII is to prohibit an employer from deterring victims of discrimination from complaining to the EEOC. Id.  Thus even retaliatory actions that are not workplace-related or employment-related may be actionable. Id. at 67. But "normally petty slights, minor annoyances,

and simple lack of good manners" are not actionable. Id. at 68; see Love v. Motiva Enterprises LLC, 349 F. App'x 900, 904 (5th Cir. 2009) ("'Negative comments and the Oral Reminder would not have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (quoting Burlington, 548 U.S. at 60 (2006))).

"At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." Garcia v. Pro. Cont. Servs., Inc., 938 F.3d 236, 243 (5th Cir. 2019). "However, '[t]he protected act and the adverse employment action must be very close in time to establish causation by timing alone.'" Brown v. Wal-Mart Stores E., L.P., 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) (quoting Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs, 810 F.3d 940, 948 (5th Cir. 2015)). The Fifth Circuit has recognized periods of six weeks to two-and-a-half months "are close enough to establish a causal connection." Id.; see Flowers v. Texas Mil. Dep't, 391 F. Supp. 3d 655, 670–71 (S.D. Tex. 2018) (finding termination six months after protected activity was not sufficiently close without more to support an inference that plaintiff was terminated because of her complaints).

"If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012) (quoting Long v. Eastfield Coll., 88 F.3d 300, 305 (5th Cir. 1996)). "If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff." Long, 88 F.3d at 305 (5th Cir. 1996).

Jefferson Parish argues that the August 22, 2019, Grievance and the October 11, 2019, Grievance do not amount to protected activity because Snowton only vaguely alleged harassment and retaliation without alleging such actions were based on any protected characteristic. Snowton does not appear to dispute its position, arguing instead that she experienced harassment and scrutiny following the anonymous complaint she and other co-workers filed in February or March of 2019 alleging racial discrimination.

Snowton describes retaliation beginning in May 2019 when she says Ruiz tried to issue a coach and counseling claiming that Snowton was not properly performing her job. But Snowton admits that Ruiz was not able to issue the coach and counseling because Snowton showed that she had been performing her duties. The next incident she cites occurred three months later during the August 22, 2019, meeting requested by Cook when she was instructed not to observe Drug Court hearings. As discussed above, Snowton reports that she was verbally attacked during the meeting. Juncker also transferred her out of her position as Drug Court and ADU Supervisor. From here, her argument is hard to follow. She essentially describes the entire factual history discussed above. She may be arguing that the entirety of the incidents amount to retaliation, from the fact of the investigation of Constant's complaint, to her removal from the BI System without notification[13] and the investigation of her access of the BI system. She describes the meetings for her August and October 2019 grievances and the pre-disciplinary hearing itself. She also cites her demotion on November 26, 2019. She cites the various correspondence related to her request for leave on November 29 for her own medical condition, her request for FMLA leave for husband's medical condition, and her request for leave for her own medical condition in 2020.

---

[13] She argues that although she agreed to Ruiz's resolution to the grievance she filed about the August 22 meeting, Ruiz never intended to abide by the proposal to engage in more effective communication because Ruiz did not notify Snowton that her access to the BI System was removed when she changed positions on September 27-30, 2019.

But Snowton does not explain her theory of causation. Only one of the incidents she describes occurred in the temporal proximity of her anonymous complaint—and that May 2019 incident cannot be considered an adverse employment context for the purpose of retaliation. A single instance of a supervisor erroneously accusing Snowton of failing to perform her duties and being corrected before a coach and counseling could be issued is not the type of action that would dissuade a reasonable employee from engaging in protected activity. The evidence indicates there were no further issues after Ruiz's attempt to issue a coach and counseling until three months later (at least five months after the anonymous complaint). There is no temporal connection and the Court cannot glean any other basis to link Snowton's anonymous complaint with the August meeting resulting in her transfer, with the investigation into the argument between Snowton and Constant, with the investigation into Snowton's BI System access, with her demotion, with the issues surrounding her FMLA leave and leave without pay, or with her presumed resignation.

The Court finds that Snowton has failed to produce evidence that could support her prima facie case of retaliation under Title VII and the LEDL. Jefferson Parish is entitled to summary judgment dismissing this claim.

*7. FMLA Interference*

It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" FMLA. 29 U.S.C. § 2615(a)(1). To state a prima facie FMLA interference claim, a plaintiff must allege that "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." Hester v. Bell-Textron, Inc., 11 F.4th 301, 306 (5th Cir. 2021) (quoting Caldwell v. KHOU-TV, 850 F.3d 237, 245 (5th Cir. 2017)). Thus, where the employee

took all FMLA available, courts have held that the employee cannot establish a FMLA interference claim. De La Garza-Crooks v. AT&T, 252 F.3d 436 (5th Cir. 2001) (affirming dismissal of FMLA interference claim because plaintiff had failed to demonstrate proof of injury where she had taken all FMLA leave available); Park v. Direct Energy GP, L.L.C., 832 F. App'x 288, 294 (5th Cir. 2020) (finding that despite allegations that the employer discouraged the employee from taking FMLA leave, the employee had not been prejudiced because the employer approved the request in full); see Spears v. Louisiana Dep't of Pub. Safety & Corr., 2 F. Supp. 3d 873, 879 (M.D. La. 2014) (holding that plaintiff could not state a claim arising out of alleged violation of FMLA posting and notice requirements where the plaintiff was never denied benefits and his FMLA rights were not impaired or prejudiced in any way).

If the plaintiff establishes a prima facie claim, "it is the employer's burden on summary judgment to articulate 'a legitimate non-discriminatory reason for the employment action at issue,' which then may be rebutted if 'the plaintiff raise[s] an issue of material fact that the employer's proffered reason was pretextual.'" Id. (quoting Caldwell, 850 F.3d at 245).

Jefferson Parish argues that Snowton cannot establish a claim for FMLA interference because it is undisputed that Snowton received the full 12 week leave provided for by FMLA. The Jefferson Parish letter dated February 17, 2020, confirms the expiration of Snowton's FMLA leave on February 28, 2020, exactly 12 weeks after her leave period began on December 7, 2019. Feb. 17, 2020, Letter, Def.'s Ex. 47, ECF No. 77-7, at 38. And Snowton affirmed that she received 12 weeks of FMLA leave in her deposition. Snowton Depo., Def.'s Ex. 20, ECF No. 77-5, at 75. Jefferson Parish acknowledges that Snowton requested six months of FMLA leave, but argues that because FMLA only authorizes a maximum of 12 weeks of leave, she cannot establish that she was prejudiced in any way when she was allowed 12 weeks of FMLA leave. 29 C.F.R. § 825.200

("[A]n eligible employee's FMLA leave entitlement is limited to a total of 12 workweeks of leave during any 12–month period.").

Snowton says that she was not provided notice of Jefferson Parish's decision within five days of her FMLA leave request and that Tilton called her husband's doctor in violation of FMLA. She complains that Jefferson Parish started monitoring her Facebook account because Juncker did not believe she was being honest about her need for leave time. She complains further that during her civil service appeal of her presumed resignation, Jefferson Parish subpoenaed records regarding her travel while she was on leave.

Critically, though, Snowton does not deny that she received 12 weeks of FMLA leave.[14] She does not claim that her FMLA rights were impaired or prejudiced in any way. Nor does she claim she suffered any injury at all, other than the alleged retaliation (which is addressed below). The Court finds Snowton has presented no genuine issue of material fact as to whether Jefferson Parish interfered with her FMLA rights. Jefferson Parish is entitled to summary judgment dismissing this claim.

8. *FMLA Retaliation*

A FMLA retaliation claim is also analyzed under the <u>McDonnel-Douglas</u> burden-shifting framework. <u>McArdle v. Dell Prod., L.P.</u>, 293 F. App'x 331, 336 (5th Cir. 2008). "To state a prima facie claim for discrimination or retaliation under the FMLA, the plaintiff must allege that '(1) he is protected under the FMLA; (2) he suffered an adverse employment decision; and either (3a) that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because of the plaintiff's request for leave.'" <u>Hester</u>, 11 F.4th at 305 (quoting <u>Bocalbos v. Nat'l W. Life Ins. Co.</u>, 162 F.3d 379, 383 (5th Cir. 1998)). If

---

[14] There is also no dispute that her health benefits were maintained through February 29, 2020.

the plaintiff does so, the employer must articulate a legitimate and nonretaliatory reason for the decision. Id.  Then the plaintiff must show that the employer's reason is a pretext for retaliation. Id.

As with a retaliation claim under Title VII, an actionable adverse employment action must be "a materially adverse action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Lindsley v. TRT Holdings, Inc., 984 F.3d 460, 470 (5th Cir. 2021) (quoting Burlington, 548 U.S. at 68).

"When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 583 (5th Cir. 2006); see Grubb v. Sw. Airlines, 296 F. App'x 383, 390 (5th Cir. 2008) (noting that termination 12 days after raising the possibility of pursuing FMLA leave was "likely sufficient" to establish a causal connection at the prima facie stage).

Snowton alleges that she experienced retaliation for taking FMLA leave. She appears to argue that this retaliation included the following: Jefferson Parish began monitoring her Facebook page to determine if she was really caring for her sick husband; during her civil service appeal of her presumed resignation, Jefferson Parish subpoenaed records regarding her travel and the frequency of her visits to her husband in the hospital during her leave time; Juncker's initial email denying her request for additional leave as an ADA accommodation and demanding she return to work on February 29, 2020;[15] her benefits were cut off effective February 29, 2020; and she was separated from employment on June 8, 2020.

---

[15] Importantly, though, she does not deny that the following business day she was provided with the forms to make an ADA accommodation request and was informed by Tilton that Juncker's email had been sent in error; she also does not deny that her leave time extended through June 7, 2020, the day before she was presumed resigned when she did not return to work.

Jefferson Parish argues that Snowton cannot establish her prima facie case of retaliation. It appears to admit that her separation from employment on June 8, 2020, is an adverse employment decision. But it argues that Snowton has failed to show that she was treated less favorably than an employee who had not requested FMLA or that the decision was made because of her request for leave. It argues that she cannot establish causation via temporal proximity because her presumed resignation occurred 12 weeks after her FMLA leave expired and six months after she requested FMLA leave. It points out that the leave without pay that Snowton received after February 28, 2020, was based on her own health condition. It submits that this was an entirely different basis than her husband's health condition, which she invoked to obtain her 12 weeks of FMLA leave.

Moreover, Jefferson Parish argues that even if Snowton could establish a prima facie case, her claim cannot survive summary judgment because Jefferson Parish has a legitimate and non-retaliatory reason for Snowton's presumed resignation. It submits that Snowton's position as Juvenile Detention Home Supervisor was critical to the services provided by Jefferson Parish and could not be held open indefinitely, as Tilton informed Snowton  in a March 12, 2020, email. Tilton Email Mar. 12, 2020, Def.'s Ex. 53, ECF No. 77-7, at 54.

In response, Snowton argues merely that a jury should be allowed to decide when her FMLA leave expired.

The Court finds no factual basis for connecting the presumed resignation to Snowton's request for FMLA leave. Over three months passed between the expiration of Snowton's FMLA leave and the date Jefferson Parish presumed she had resigned because she did not return to work. Snowton does not claim she was willing and able to return to work on June 8, 2020. She apparently argues that she should have been allowed to continue on leave without pay. She does not claim that other workers who had received a similar period of non-FMLA leave without pay were treated

differently. There is simply no factual basis for finding that she was presumed resigned because she requested and obtained FMLA leave. Moreover, the defendants have established a legitimate basis for their decision to presume Snowton resigned. Snowton has presented no evidence to show that its reason was pretextual. The Court finds that Snowton has failed to identify a material issue of fact as to whether Jefferson Parish presumed her resigned on June 8, 2020, *because* she had taken FMLA leave.

Snowton may also be claiming that she experienced actionable retaliation when Jefferson Parish began monitoring her Facebook page and later subpoenaed records during her administrative appeal about how often she was visiting her husband during her FMLA leave.[16] But Snowton has not explained what makes these actions materially adverse. She appears to admit that Jefferson Parish undertook these actions because it questioned the veracity of her stated basis for FMLA leave. She does not show why it would be improper for an employer to do so. She cites no jurisprudence that would support finding retaliation under such circumstances. As a matter of law, the Court finds that these actions do not rise to the level of a materially adverse action that would dissuade a worker from taking FMLA leave.

On the undisputed summary judgment evidence and interpreting disputed facts in Snowton's favor, the Court finds that Snowton cannot support a claim for FMLA retaliation. Jefferson Parish is entitled to summary judgment dismissing this claim.

9.  *Dismissal of Defenses*

Because the Court has found that the defendants are entitled to summary judgment in their favor dismissing all of Snowton's claims against them, Snowton's Motion for Partial Summary Judgment seeking dismissal of some of defendants' defenses is moot.

---

[16] Jefferson Parish does not appear to address this argument. Snowton cites, but does not attach, pages of Juncker's testimony to support her assertion.

Conclusion

For the foregoing reasons, the Court finds that plaintiff has failed to present a genuine issue of material fact and that summary judgment for the defendants is appropriate. Accordingly, defendants' Motion for Summary Judgment (Rec. Doc. 77) is GRANTED.  Plaintiff's Motion for Partial Summary Judgment Motion for (Rec. Doc. 71) is DENIED as moot.

New Orleans, Louisiana, this  3rd  day of January, 2024.

                               Janis van Meerveld
                        United States Magistrate Judge